## In the Matter of EDWIN H. GREENLEAF.

Court of General Sessions of County of New York, May 3, 1941.

*Thomas E. Dewey, District Attorney [Murray I. Gurfein, Assistant District Attorney, of counsel], for the People.*

*Neil F. Towner [Jeremiah T. Mahoney of counsel], for the respondent Greenleaf.*

GOLDSTEIN, J. This is a proceeding to adjudge in contempt one Edwin H. Greenleaf, a witness called to testify before a New York County Grand Jury, January, 1940, Term continued.

Greenleaf was subpœnaed to testify before that grand jury which is conducting an inquiry, among other things, into an alleged conspiracy to commit perjury and an alleged conspiracy to suborn perjury in New York county. The witness is alleged to have refused to answer certain legal interrogatories put to him before the said grand jury. The foreman and a quorum of the grand jury appeared in court. The grand jury through its foreman, stated that it was conducting the inquiry referred to above and put before the court the following facts:

One of the subject-matters of the inquiry into the conspiracy to commit perjury and to suborn perjury involves testimony concerning an alleged $10,000 cash loan by one George W. Loft to Charles H. Mullens and an alleged repayment of said loan in two $5,000 installments purported to have been made after receipt of cash by Mullens on July 12, 1937, and November 10, 1937. There was testimony to the effect that the witness Greenleaf was associated with Charles H. Mullens in gasoline stations in the city of Albany. Testimony further disclosed that on the same day that Mullens derived $5,000 in cash on July 12, 1937, Greenleaf similarly drew $5,000 in cash, and that on November 12, 1937, two days after Mullens derived $5,000 in cash, the witness Greenleaf also drew $5,000 in cash. One of the two checks by which Greenleaf derived the sum of $5,000 in cash on November 12, 1937, was a check in the amount of $3,500, which was dated November 10, 1937, and cashed November 12, 1937.

The grand jury stated that it deems it relevant to its inquiry to determine the disposition made by Greenleaf of these cash sums, on the theory that the answer to the questions asked may directly cast light on the true purpose for which Mullens derived the $5,000 amounts in cash on each occasion.

The court was informed by the grand jury that the purpose of the inquiry was stated to the witness by the assistant district attorney conducting it. The witness, who at the time had not waived immunity, was questioned and was specifically informed on the record that the grand jury was conferring immunity on him pursuant to the conspiracy sections of the law. The witness persisted in his refusal to make answer to the questions put to him concerning the disposition of the two $5,000 amounts previously referred to.

After learning these facts, the court directed the witness to return to the grand jury room to make answer. The witness' counsel

requested an opportunity to examine the record made in the grand jury  The district attorney specifically waived the provisions of secrecy with which the Code of Criminal Procedure protects the actions of the grand jury, and on order of the court counsel for the witness was given an opportunity to examine the record.  After such examination, counsel, on behalf of the witness, reiterated the refusal to answer and stipulated that it would be a superfluous gesture to return to the grand jury room.  The grand jury then duly voted to cite the witness for contempt.  The interrogatories in question and the witness' response thereto were read into the record and the witness was furnished with written specifications for the citation of contempt.  The court thereupon set a date for hearing (five days later) to determine whether the witness had been guilty of a criminal contempt within the meaning of subdivision 5 of section 750 of the Judiciary Law, which states that a court of record has power to punish for " a criminal contempt, a person guilty of  *  *  *  contumacious and unlawful refusal to be sworn as a witness  or, after being sworn, to answer any legal and proper interrogatory."

The witness had notification of the accusation and reasonable time to make a defense as provided by section 751 of the Judiciary Law.  (*Matter of Spector* v. *Allen*, 281 N. Y. 251, 256.)

At the hearing a deputy assistant district attorney took the stand on behalf of the People and testified to the relevancy of the questions propounded in the grand jury.  As previously stated, the record before the grand jury had been marked in evidence.  The respondent Greenleaf offered no testimony other than cross-examination of the deputy assistant district attorney by his counsel.  He now raises three contentions: 1. That the questions asked of him were not relevant to the inquiry. 2. That his constitutional privilege against self-crimination has been invaded. 3. That in any event, the immunity granted him was not sufficiently broad to protect him within his constitutional rights.

I shall reserve discussion of the respondent's first contention to the last.  The respondent states that although the grand jury of the county of New York granted him immunity, such immunity would not protect him against possible prosecution at a later date in another county of this State.  This contention is without merit. The district attorney of New York county is a constitutional officer. His investigations are conducted in the name of the People of the State of New York.  Indictments, when returned by the grand jury of New York county, are returned in the name of the People of the State of New York.  It is patent that when the grand jury of New York county confers immunity it does so in the name of

the People of the State of New York. In its capacity as a grand jury it is a duly constituted agency of the State within the limits set by our Constitution and our laws. Its lawful acts are binding not only on the grand jury of New York county, but also on the People of the State of New York. Clearly, the immunity granted would be binding in all parts of and upon all agencies of our State.

The respondent points out that the immunity granted by the grand jury of New York county would not protect him against prosecution by the Federal government on the basis of information that might come to light through this investigation. No factual argument was advanced as to how the answers might even remotely involve the respondent in Federal criminal proceedings. Whether this be true or not, the grand jury has conferred all the immunity within the power of the State. There is no arrangement for reciprocity in the granting of immunity between Federal and State governments. It would not be consonant with public policy to hold that the witness can refuse to testify on this basis. Common sense and sound law both dictate that the State's investigation should not be hampered on the theory that the State does not provide immunity against Federal prosecution. As was said in *Dunham* v. *Ottinger* (243 N. Y. 423, 438): " While some insubstantial criticism is made of the manner in which a witness is compelled to claim immunity under the statute, the main claim is that the statute does not properly safeguard him by precluding the use of his testimony in criminal proceedings which might be nstituted by the Federal government. This is true. The statute does not purport to give and could not give protection against such a prosecution. It does give ample protection against the use of such testimony in our own tribunals and it is perfectly well established that this is a sufficient immunity; that all that the State is required to or can do is to give immunity against its own processes and, if it has done that, as this statute does it, it has satisfied the requirements of the Constitution. (*Hale* v. *Henkel*, 201 U. S. 43; *Brown* v. *Walker*, 161 U. S. 591.) "

The other point raised by the respondent is that of relevancy of the interrogatories to the inquiry. We must start with the major premise that the questions asked were directed to the witness in good faith; the inquiry is being conducted by a grand jury. The grand jury is the agent of the sovereign State of New York. The grand jury consists of twenty-three individuals, and as a body they constitute an arm of our court; it must be presumed that their inquiry is carried on in good faith and it would take evidence of a concrete nature to rebut this presumption. The respondent has offered no evidence attacking the good faith of the grand jury in asking the questions which the respondent has refused to answer.

The facts as disclosed at the hearing indicate that Edwin H. Greenleaf was associated with one Charles H. Mullens in the gasoline station business in the city of Albany. The New York county grand jury is now conducting an inquiry with respect to possible perjury or subornation of perjury, by reason of the fact that a possibly perjurious explanation has been given about the disposition of two $5,000 payments made by Mullens. That explanation was given " under oath " in New York county. Edwin H. Greenleaf is not only a business associate of Mullens, he is also a director of a bank. The grand jury is aware of the fact that a banker associated with a man in a private capacity who also holds public office, withdrew two $5,000 cash sums on the same day or very nearly the same day, as did his business associate. The grand jury knows from experience that legitimate business transactions involving large sums are not customarily conducted by cash payments — particularly by bank directors. The witness Greenleaf has been asked questions about the disposition of the money and he refuses to answer on constitutional grounds, and assigns the strictly factual reason that what he did with the money is his own private business and that if any crime was committed, it was committed in Albany county. The place of its disposition is immaterial. It is not the purpose of the grand jury to find out when, where or how the respondent's money was disposed of, except in so far as it may throw light on the question of whether an explanation given for the disposition of exactly the same amounts on or about the same days by the respondent's business associate Mullens before a New York county grand jury was perjurious. That it has every right to do. The respondent has every right to decide whether the testimony he gives before the grand jury would be incriminating, but the grand jury has already given him full immunity. The only issue is whether the questions asked are pertinent to the inquiry. Relevancy is not a matter of degree; the court should not substitute its own opinion for that of the twenty-three citizens who are charged by law with the duty of inquiring into criminal activity. If it appears that the answers to be elicited may be pertinent to the inquiry, the court would not be justified in interfering. Here the witness has been asked what he did with certain funds withdrawn under the circumstances described, and the court would not be justified in holding that there can be no connection with the withdrawals of Mullens and the respondent Greenleaf.

I hold that the respondent refused to answer proper and relevant legal interrogatories and, therefore, I adjudge him to be in contempt.