GEORGE A. CARR, Petitioner, *v.* Department No. 1, SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, in and for the COUNTY OF WASHOE, HONORABLE GRANT L. BOWEN, Judge Thereof, and the WASHOE COUNTY GRAND JURY, Respondents.

No. 4337

October 12, 1960 356 P.2d 16

*Grubic, Drendel and Bradley,* of Reno; *Streeter and Sala,* of Reno, for Petitioner.

*William J. Raggio,* District Attorney; *Drake DeLanoy* and *Eric L. Richards,* Deputy District Attorneys, Washoe County, for Respondents.

## O P I N I O N

By the Court, PIKE, J.:

Petitioner George A. Carr seeks to have made permanent an alternative writ of prohibition issued by this court.

The Washoe County grand jury subpoenaed petitioner, a city councilman of the city of Reno, to appear before it as a witness. The subpoena to Carr was signed by one H. Sewell as assistant grand jury foreman. Carr appeared before the jury in response to such subpoena and was sworn to testify as a witness. After testifying that he was engaged in the public relations and advertising business, Carr refused to answer certain questions requiring him to state the names of his clients. In so refusing Carr expressly stated that his refusal was not based upon the ground that his answers might tend to incriminate him. He stated as the basis of his refusal to answer that certain of his work in public relations was of a confidential nature and that he was apprehensive that should he disclose the requested information before the grand jury such information might well thereafter become public, to the detriment of Carr's business and income.

Following Carr's refusal to disclose the names of his clients, said Sewell, as acting foreman of the grand jury, filed his petition and supporting affidavit with the

clerk of the lower court, seeking an order directing Carr to show cause why Carr should not be punished for contempt. Sewell's affidavit stated that affiant was the acting foreman and a member of the grand jury which had been lawfully impaneled on a previous date, and that on June 15, 1960 said grand jury "* * * was inquiring into irregularities of the Reno police department and the willful and corrupt misconduct in office of public officers of every description within the county, pursuant to NRS 172.300 1(c)."[1] It further recited that on the date referred to, Carr, after having been duly sworn to testify as a witness, refused to answer certain questions of the nature hereinabove indicated, and that such refusal to answer impeded the grand jury and constituted an unlawful and contemptuous act. Carr filed a motion to dismiss the contempt petition above referred to and, after the court heard and denied the motion, filed his affidavit and answer to the petition. Carr's affidavit stated his reason for such refusal was that disclosure of the requested information would have jeopardized his livelihood and embarrassed his clients. Further, he denied having been guilty of "any irregularities in the Reno police department," one of the areas of investigation referred to in Sewell's affidavit, or having engaged in any willful or corrupt misconduct in office. He denied that the questions which he had refused to answer were relevant to the subject matter of the inquiry as stated in Sewell's affidavit.

At the hearing before the court on the criminal contempt matter, the transcript of Carr's testimony given before the grand jury, including the questions asked him and his refusal to answer them, was introduced in evidence, and Sewell testified as a witness on behalf of the state. Sewell testified that, "* * * the grand jury was investigating alleged corruption in the police department, and also the influences that might have been pressuring the police department from the city

---

[1]"172.300. Matters into which grand jury must and may inquire. 1. The grand jury must inquire into : * * * (c) The willful and corrupt misconduct in office of public officers of every description within the county. * * *"

council or others", and in his testimony referred to an interim report that had been submitted by the grand jury to the court as a result of such investigation.

The trial court found that the question that had been asked Carr before the grand jury and which Carr had refused to answer was relevant, material and proper, and entered its order that Carr appear before the next session of the grand jury and answer the question which had been propounded to him, namely, "Who are your clients connected with the public relations business?". The court dismissed the charge of criminal contempt against Carr, and the trial court's remarks show its view of the proceedings before it as presenting for its determination the issue of whether or not the particular question was relevant and proper and whether Carr should be required to answer.

After the trial court entered its order that Carr appear before the grand jury and answer the question referred to, Carr petitioned this court and obtained an order that an alternative writ of prohibition issue. Such alternative writ, by its terms, directed the trial court and other respondents herein, to refrain from any further proceedings in the contempt matter, pending the further order of this court.

Petitioner asserts: (1) deficiency in Sewell's affidavit; (2) lack of authority on the part of Sewell to swear petitioner as a witness; and (3) alleged impropriety of certain remarks made by the district attorney pertaining to the charge of criminal contempt against petitioner. These were all disposed of without prejudice to petitioner's rights when the trial court dismissed the contempt charge, thus purging petitioner of any alleged contempt.

However, as petitioner has been ordered by the trial court to return before the grand jury and answer the question stated in the court's order, the relevancy of such question to the grand jury disputed by petitioner must be considered.

In Parus v. District Court, 42 Nev. 229, 239, 174 P. 706, 709, 4 A.L.R. 140, this court stated, "The grand

jury, whatever its ancient functions may have been, has under modern law become an institution endowed largely with inquisitorial powers. Not only does it have to do with criminal investigations, but by statutory provision it may inquire into the affairs, conduct, and regulation of public offices, boards and commissions. The public health and public welfare, as well as the moral atmosphere of a community, are matters of proper inquiry for our modern grand jury."

In the instant case the grand jury was inquiring into irregularities of the Reno police department, and the willful and corrupt misconduct in office of public officers within the county, matters properly within the scope of its statutory authority. Basically we must consider whether or not the questions asked the petitioner were relevant to the subject matter of investigation there before the grand jury, and we conclude that they were.

Petitioner's status before the grand jury was that of a witness who had been subpoenaed to attend and give his testimony in connection with the investigation then in progress. The reasons given by petitioner for not answering the questions did not disclose the existence of any relationship, between him and the public relations or advertising clients of his business, of the nature recognized in law as confidential and privileged. Some of such latter relationships, so recognized as privileged by the statutes of this state, are those of husband and wife and physician and patient. NRS 48.040, 48.080. However, the general rule is that a witness may not refuse to answer a proper question on the ground that he may thereby suffer injury in his business. 58 Am. Jur. 41, Witnesses, sec. 34, n. 10. In this regard the law does not distinguish between the withholding of documents relating to the proof of facts and the refusal to give oral answers to matters within a witness' knowledge. The evidence must be produced in either case, unless such production is excused by some special privilege of the nature hereinbefore indicated. 58 Am.Jur., 42, Witnesses, sec. 34, n. 11.

As a witness, and not as a party, he was not in a position to contend that the question which was asked him was not relevant to the inquiry. U. S. v. McGovern, 2 Cir., 60 F.2d 880. In re Edge Ho Holding Corp., 256 N.Y. 374, 176 N.E. 537, 539, the court stated, "Very often the baring of the information is not susceptible of intelligent estimates until it is placed in its setting, a tile in the mosaic." Likewise, in Blair v. U. S., 250 U.S. 273, 39 S.Ct. 468, 471, 63 L.Ed. 979, the following statement appears with reference to the general scope of examination of a witness before the grand jury, "The witness is bound not only to attend, but to tell what he knows in answer to questions framed for the purpose of bringing out the truth of the matter under inquiry. He is not entitled to urge objections of incompetency and irrelevancy, such as a party might raise, for this is no concern of his. * * * It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime."

In re Greenleaf, 176 Misc. 566, 28 N.Y.S.2d 28, 32, pertained to a situation where a person in public office and also in private business in the locality refused to testify, stating that certain matters related to his own business. In that case the court said that there was no evidence attacking the good faith of the grand jury in asking the questions which the witness had refused to answer; that it appeared that the questions were pertinent to the inquiry, and stated, "* * * If it appears that the answers to be elicited may be pertinent to the inquiry, the court would not be justified in interfering."

In the instant situation, where the reason given by petitioner for not answering the question was based solely upon the assertion of a business relationship not recognized by the law as being confidential and privileged, and it appears that the answers sought to be

obtained may be pertinent to the inquiry, the witness should be required to answer. See the discussion of this subject by Judge Learned Hand speaking for the Second Circuit Court of Appeals in McMann v. Securities and Exchange Commission, 87 F.2d 377, 109 A.L.R. 1445.

The writ of prohibition is denied, and the alternative writ is vacated.

MCNAMEE, C. J., and BADT, J., concur.