Harold R. Soden, J.
This court heard the above-entitled matters at a Special Motion Term in the County of Schenectady on February 20, 1975. This court impaneled the Grand Jury for the County of Schenectady on May 7, 1973 and extended that Grand Jury pursuant to CPL 190.15 (subd 1) on September 4, 1973, October 15, 1973, January 15, 1974, March 15, 1974, December 15, 1974 and February 27,1975.
Mr. Robilatto applied for the following relief: (1) to quash a Grand Jury subpoena; (2) to suppress the testimony given before the Grand Jury by Nicholas Robilatto; and (3) a protective order necessary to effectuate the relief requested. Misters Di Coceo and Cuomo moved the court for an order: (1) enjoining the Organized Crime Task Force from continuing the use of the Grand Jury in Schenectady County; (2) suppressing all the evidence and testimony presented to the afore-mentioned Grand Jury; (3) quashing the witnesses’ subpoenas issued with regard to the above-entitled investigation; and (4) declaring unconstitutional the purported delegation of authority exercised by the Organized Crime Task Force, and for such other and further relief as may seem just and proper.
*855 STATEMENT OF FACTS
On December 10, 1973, Elbert H. Watrous, Jr., the District Attorney for the County of Schenectady, by letter to Honorable Robert E. Fisher, Deputy Attorney-General in charge of the Organized Crime Task Force, formally requested the assistance of the Organized Crime Task Force in an ongoing investigation concerning "organized crime” in Schenectady County. This was done pursuant to subdivision 7 of section 70-a of the Executive Law. On January 14, 1974, Governor Malcolm Wilson, pursuant to the provisions of subdivision 7 of section 70-a of the Executive Law, approved the appearance of the Deputy Attorney-General and his assistants before a Grand Jury of Schenectady County for the purpose of ."conducting proceedings related directly or indirectly to the activities of Paul Anthony Di Coceo in the County of Schenectady or other counties of the State or elsewhere, including but not limited to his employment, business, and activities involving any persons or corporations with whom the said Paul Anthony Di Coceo may be or has been associated”. On February 12, 1974, the Organized Crime Task Force began to present evidence to the Grand Jury of Schenectady.
Mr. Robilatto was subpoenaed on February 9, 1974 and appeared before the Grand Jury on February 20, 1974. At that time, Mr. Robilatto was allegedly advised of his legal rights and given transactional and testimonial immunity. Mr. Robilatto subsequently appeared before the Grand Jury on April 9, 1974, September 25, 1974, and December ll, 1974. The latter appearance was at the request of Mr. Robilatto’s attorney some time after November 4, 1974. Mr. Robilatto is the President of the International Brotherhood of Teamsters Local 294 in Albany, New York. A subpoena duces tecum was served on that organization on March 19, or 20, 1974 for "any and all documentations supporting expense and travel account payments made to or on behalf of Nicholas Robilatto”. The subpoena duces tecum was "substantially complied with on April 8, 1974” according to the Assistant Attorney-General’s affidavit.
The other above-named witnesses who have joined by stipulation in the original Robilatto order to show cause likewise appeared before the Schenectady County Grand Jury. Mr. Edward Cuomo appeared before the Grand Jury on January 7, 1975 and February 6, 1975. Mr. Duilio Di Coceo appeared before the Grand Jury on February 6, 1975.
*856 On September 9, 1974, Paul Di Coceo, by his attorney, obtained an order to show cause directed to William M. Tendy, Assistant Attorney-General, why an order to suppress intercepted telephone communications and prohibit their use by a Schenectady County Grand Jury should not issue on the grounds that the interception took place in violation of CPL 700.50 (subd 3). The requested order was denied by Justice William J. Crangle on September 17, 1974 and the same order directed Paul A. Di Coceo to appear before the Grand Jury on September 23, 1974. At a hearing prior to this decision, court orders issued by Justice Crangle authorizing the electronic eavesdropping were produced. Justice Crangle denied the requested order upon the authority of Matter of George (74 Misc 2d 359), and Matter of Cali v United States (464 F2d 475), and further held a motion to suppress evidence is not available to a grand jury witness under these circumstances”. Justice Crangle also held: "as a matter of policy at the grand jury stage the existence of the order alone precluded consideration of any defect in the eavesdropping proceedings”. In this proceeding, Di Coceo alleged that the People, through the Assistant Attorney-General, Mr. Tendy, had failed to give timely notification of the wiretaps to the telephone subscriber. This allegation was not denied by the People through Mr. Tendy. Justice Crangle’s decision is currently on appeal in the Appellate Division, Third Department, State of New York.
The instant hearing was precipitated by objections raised by witness Cuomo in the course of his testimony before the Schenectady County Grand Jury on January 7, 1975. After Mr. Cuomo was informed of his rights, given transactional and testimonial immunity and sworn in, he asked to be informed of the scope of the Special Attorney-General’s inquiry and whether his voice was overheard by electronic devices. After numerous consultations with his attorney, Mr. Cuomo raised the following objections to the entire proceedings before the Grand Jury: (1) the jurisdiction of the Special Attorney-General was improper; (2) the jurisdiction of the Grand Jury was improper; (3) the Grand Jury itself was tainted; (4) the Grand Jury was an improper fishing expedition; (5) the source for the questions asked of him before the Grand Jury was an illegal electronic surveillance; (6) the Assistant Attorney-General was an unauthorized person present in the Grand Jury room; (7) *857 certain questions were beyond the scope of the Grand Jury’s inquiry; (8) the immunity laws of New York State were unconstitutional, and (9) that the Grand Jury had no right to question him.
Mr. Cuomo also stated that his position would perhaps be different if the District Attorney of Schenectady County was conducting the investigation and questioning.
On the following day the Special Attorneys-General and counsel for. Mr. Cuomo appeared before the Honorable J. Vincent Cerrito to request a ruling on the objections raised the previous day by Mr. Cuomo. Throughout Mr. Cuomo’s testimony there are requests for a court ruling on the propriety of the questioning by the Assistant Attorney-General and the jurisdiction of the Attorney-General and Grand Jury. Mr. Cuomo’s counsel, Mr. Slotnick, raised objections similar to those raised by Mr. Cuomo before the Grand Jury: (1) both the Grand Jury and the Assistant Attorney-Generals lacked jurisdiction; and (2) illegal electronic surveillance formed the basis for all questions put to Mr. Cuomo before the Grand Jury. Justice Cerrito did not rule on any of these objections and directed that they be submitted to either Justice Crangle or this court.
On February 6, 1975, Mr. Cuomo again appeared before the Grand Jury and raised the same objections with additional reliance on Justice Aloi’s decision in People v Ron-Ore Soil Systems (81 Misc 2d 121), which held that section 70-a of the Executive Law was unconstitutional. Immediately thereafter, Mr. Tendy noted that the Supreme Court, Appellate Division, Fourth Department, in People v Rallo (46 AD2d 518), decided January 28, 1975, had ruled that section 70-a of the Executive Law was constitutional.
Later, in the same day, Mr. Duilio Di Coceo appeared before the Grand Jury and read three separate statements objecting to the entire proceedings before the Grand Jury. The first two of these statements were essentially the same objections raised by Mr. Cuomo but the third statement elaborated on certain objections raised by Mr. Slotnik before Justice Cerrito on January 8, 1975 concerning alleged illegal electronic surveillance. Mr. Di Coceo stated that his position would perhaps be different if the District Attorney of Schenectady County was conducting the investigation and questioning.
DECISION
This court does not here decide whether there may be *858 suppression of the witnesses’ testimony because of alleged serious irregularities in obtaining and using eavesdropping warrants. (See People v Einhorn, 35 NY2d 948.) By stipulation of the parties and agreement of the court at oral argument, a hearing on those issues will be held at a later date. The parties are directed to apply to Honorable Justice Crangle who issued the wiretap orders.
This hearing was conducted under the authority of People v Ianniello (21 NY2d 418, 425, cert den 393 US 827). According to available information, two of these witnesses have persistently refused to answer questions put to them in front of the Grand Jury on colorably meritorious grounds and have thus forced the prosecutor, here the Assistant Attorney-General, to "take the matter into open court for a ruling”. This court perceives three issues: (1) Do the witnesses have standing to argue the constitutionality of section 70-a of the Executive Law, and the propriety and jurisdiction of the Grand Jury and of the Attorney-General? (2) Should the subpoenas be quashed? (3) Should the testimony be suppressed? All of the above questions should be answered in the negative.
i
In Blair v United States (250 US 273) the United States Supreme Court held: witnesses summoned to testify before a Federal Grand Jury are not concerned with the possible invalidity of the statutes under which the Grand Jury’s investigation is conducted, and the consequent want of jurisdiction of court or jury over the subject matter, and they may not urge that objection to justify their contumacy in refusing to testify. On authority of Blair (supra), in People v Doe (247 App Div 324, 326), the court held: A witness is not entitled to challenge the authority of the Grand Jury provided it has de facto organization and existence. This decision was affirmed by the New York Court of Appeals in 272 NY 473.
In three more recent cases, the United States Supreme Court has maintained the necessity of allowing Grand Juries, both State and Federal, to remain unencumbered by preliminary hearings and "mini” trials: Branzburg v Hayes (408 US 665 [1972]); United States v Dionisio (410 US 1 [1973]); United States v Calandra (414 US 338 [1974]).
In Branzburg (supra), the court, in rejecting the proposition that newsmen have a privilege under the First Amendment not to appear and testify before the State or Federal Grand *859 Juries which might inquire concerning confidential sources, also rejected a qualified privilege formula under which newsmen could be forced to testify provided the Government involved showed a "compelling need”. The court was reluctant to embroil the courts in preliminary factual and legal determinations with respect to whether the proper predicate had been laid for the reporters’ attendance (Branzburg, supra, p 705).
In United States v Dionisio (supra), the Supreme Court held that compelling a witness to furnish a voice exemplar before a Federal Grand Jury did not violate the Fourth Amendment and, thus, a preliminary showing of reasonableness was not required. The court stated (410 US 1, 17, supra): "Any holding that would saddle a grand jury with minitrials and preliminary hearings would assuredly impede its investigation and frustrate the public’s interest in the fair and expeditious administration of the criminal laws” (citations omitted). The court further stated (pp 17-18): "The grand jury may not always serve its historic role as a protective bulwark standing solidly between the ordinary citizen and an overzealous prosecutor, but if it is to even approach the proper performance of its constitutional mission, it must be free to pursue its investigations unhindered by external influence or supervision so long as it does not trench upon the legitimate rights of any witness called before it”.
In United States v Calandra (414 US 338, 349-350, supra), the Supreme Court, in deciding not to extend the Fourth Amendment exclusionary rule to Grand Jury proceedings, stated: "Permitting witnesses to invoke the exclusionary rule before a grand jury would precipitate adjudication of issues hitherto reserved for the trial on the merits and would delay and disrupt grand jury proceedings. Suppression hearings would halt the orderly progress of an investigation and might necessitate extended litigation of issues only tangentially related to the grand jury’s primary objective. The probable result would be 'protracted interruption of grand jury proceedings’. Gelbard v United States, 408 US 41, 70 (1972) * * * effectively transforming them into preliminary trials on the merits. In some cases the delay might be fatal to the enforcement of the criminal law.”
While the holdings in People v Ianniello (21 NY2d 418, supra), and People v De Salvo (32 NY2d 12, cert den 415 US 919), do allow an interruption of the Grand Jury process for a ruling by a court concerning the refusal of a witness to testify, *860 the same holdings do not undercut the holdings in Blair (250 US 273, supra), and People v Doe (274 App Div 324, supra). The interruption procedure announced in People v Ianniello and approved in De Salvo seems to specifically limit the Judge to a ruling on three grounds: (1) the pertinency of the questions; (2) the extent of the witnesses’ immunity from prosecution for a prior offense; and (3) the merit of a claimed testimonial privilege. While this court concedes that certain language in De Salvo may imply that there are other grounds besides the above on which a witness can force the prosecutor into court to see if the witness’s refusal is justified, the Blair and People v Doe logic is more persuasive. Furthermore, the Grand Jury record here preserves the objections of these witnesses and indicates that they were timely raised. The record will prevent the loss of these objections as a possible defense in any subsequent contempt proceedings. While it is true the court has a duty to supervise and prevent unfairness in Grand Jury proceedings (People v Ianniello, supra, pp 424, 468), CPL article 210 clearly manifests the legislative intent not to allow challenges to the Grand Jury’s authority until after it has acted (see, specifically, CPL 210.35).
n
After reading the Grand Jury minutes and applying the standards outlined in Matter of Koota v Colombo (17 NY2d 147, cert den 384 US 1001), this court holds that the questions asked of the witnesses are pertinent to the proceedings before the Grand Jury. The arguments to quash the subpoenas are without merit: the Grand Jury has a right to the testimony of these witnesses because they are associated, directly or indirectly, with the businesses and persons under investigation. The witnesses have failed to sustain their burden of demonstrating any bad faith or patent invalidity in this Grand Jury investigation (Matter of Greenleaf, 176 Misc 566, affd sub nom Matter of Greenleaf v Goldstein, 266 App Div 658, affd 291 NY 690).
hi
For reasons stated above (see par i), the witnesses are not entitled to have their testimony suppressed.
CONCLUSION
For reasons stated above (pars, i thru in), the witnesses, *861 pending the outcome of the Einhorn hearing before Justice Crangle, are ordered to answer the questions the Assistant Attorney-General may ask them before the Schenectady County Grand Jury.