Burton B. Roberts, J.
This motion raises the novel question of whether a Grand Jury witness who has been indicted for criminal contempt (Penal Law, § 215.51) based upon the allegation of "conspicuously unbelievable, evasive, equivocal and patently false answers” (see People ex rel. Valenti v McCloskey, 6 NY2d 390, 398, app dsmd 361 US 534; Matter of Finkel v McCook, 247 App Div 57, 62, affd 271 NY 636) may have his Grand Jury testimony suppressed and the indictment dismissed on the ground that the questioning was the product of improperly issued electronic surveillance orders.
The facts may be briefly summarized. On February 20, 1973 the defendant, Edward McGrath, appeared before a Grand Jury of New York County pursuant to subpoena and was sworn. He was immediately advised by an Assistant District Attorney that his presence was exclusively that of a witness in an investigation, the scope of which was defined for him. He was also informed that he would receive full and complete transactional immunity pursuant to CPL 50.10, which was read and explained. Mr. McGrath was then told, in response *251 to an inquiry made by him, that some of the questions about to be propounded were based upon court-ordered electronic surveillance. His ensuing request to be taken before the court was honored by the Assistant District Attorney. In court, Mr. McGrath’s lawyer argued that his client was entitled to a full suppression hearing. The Justice presiding called for the production of the eavesdropping applications, and reserved decision overnight. The following morning the Justice announced that he had examined the eavesdropping orders and that "each appears on its face to be valid”. The Justice then ruled that "[w]hatever rights a witness may have in defense of a contempt proceeding, he cannot move to suppress evidence before a Grand Jury”, citing People v Costello (21 NY2d 967). Mr. McGrath was therefore directed to return to the Grand Jury and answer all relevant questions. Reappearing before the Grand Jury, he stated that he had been advised by his attorney that he was not legally obligated to testify without a "judicial hearing” and that he was doing so "under protest”. He then proceeded to answer questions for approximately 180 pages of Grand Jury transcript. A portion of this testimony, pertaining to one facet of the multi-faceted inquiry, constitutes the basis for the single count of contempt now before the court.[1]
In this court, the People concede that all relevant questioning of the defendant was based upon the eavesdropping alleged to be improperly authorized. A threshold issue, then, is the legality of this eavesdropping, which was undertaken pursuant to a series of some 13 orders, signed by Justices of the Supreme Court in New York County between May, 1969 and March, 1970. Since each subsequent order was based upon information derived from its predecessors, the defendant, who was overheard in conversation pursuant to the progenitor of the series, the order dated May 7, 1969, has standing to object to evidence derived from the entire series (Alderman v United States, 394 US 165; Wong Sun v United States, 371 US 471). It follows, then, that the illegality of the first order would be dispositive of the entire issue of legality, and that is, in fact, the case here. The offenses designated as the subject matter of the May 7, 1969 order are bribery, gambling and conspiracy. The application for the order recounts police observations of *252 repeated meetings between men with extensive criminal records for gambling and other crimes, and several meetings between one such individual, Hugh Mulligan, and various police officers. While these meetings are highly suspicious, their subject matter is purely speculative. Mere suspicion that something nefarious is afoot is not probable cause (People v Corrado, 22 NY2d 308). The Fourth Amendment, as it applies to eavesdropping, requires probable cause to believe that a specific crime has been or is being committed and that particularly described conversations constituting evidence of that crime will be obtained through electronic surveillance at a specific location (Berger v New York, 388 US 41; see CPL 700.15). The facts set forth in support of the May 7 order, if true, leave little doubt about the good faith of the investigators in attempting to pursue criminal activity, but they do not permit a probable cause conclusion with regard to the nature of any crime being committed or the use of the telephone by participants in criminal activity.[2]
Given the legal insufficiency of the eavesdropping in this case and the defendant’s standing to attack it, attention is ready to be turned to the effect on the defendant’s Grand Jury testimony and the instant contempt indictment. A summary of the applicable law follows.
The proposition that a claim of illegal eavesdropping may be raised in defense of a Grand Jury witness charged with refusing to answer questions derived from such eavesdropping was first recognized in Gelbard v United States (408 US 41). In Gelbard, Grand Jury witnesses claiming to be the victims of illegal eavesdropping sought to invoke the prohibition contained in section 2515 of title 18 of the United States Code in defense to summary civil contempt charges brought for refusal to obey court orders compelling them to testify before the Grand Jury. Section 2515, which was enacted as part of the Omnibus Crime Control and Safe Streets Act of 1968, provides as follows: "Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United *253 States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.”
The narrow question decided by the court in Gelbard was whether section 2515 provided the defense of illegal eavesdropping at the Grand Jury stage to a witness facing a civil contempt charge. In answering this narrow question in the affirmative, the court assumed for purposes of its decision that the witness’ potential testimony would be, under the language of section 2515, "evidence derived” from intercepted communications, and assumed further that such testimony would be "disclosure” in violation of the Omnibus Crime Control Act, citing subdivision (1) of section 2511 of title 18 of the United States Code, which provides criminal sanctions for willful violations. (408 US at p 47.) The court then based its decision on the premise that unauthorized interceptions and the disclosure or use of information obtained through unauthorized interceptions are crimes, and the victim of such interception, disclosure, or use is entitled to recover civil damages (US Code, tit 18, § 2520). Reasoned the court (p 52): "Title III makes illegal not only unauthorized interceptions, but also the disclosure and use of information obtained through such interceptions. 18 U. S. C. § 2511(1); see 18 U. S. C. § 2520. Hence, if the prohibition of § 2515 is not available as a defense to the contempt charge, disclosure through compelled testimony makes the witness the victim, once again, of a federal crime. Finally, recognition of § 2515 as a defense 'relieves judges of the anomalous duty of finding a person in civil contempt for failing to cooperate with the prosecutor in a course of conduct which, if pursued unchecked, could subject the prosecutor himself to heavy civil and criminal penalties.’ In re Grand Jury Proceedings, Harrisburg, Pennsylvania (Egan), 450 F. 2d at 220 (Rosenn, J., concurring). 'And for a court, on petition of the executive department, to sentence a witness, who is herself the victim of the illegal wiretapping, to jail for refusal to participate in the exploitation of that crime in violation of the explicit command of Section 2515 is to stand our whole system of criminal justice on its head.’ In re Evans, 146 U. S. App. D. C. 310, 323, 452 F. 2d 1239, 1252 (1971) (Wright J., concurring).”
The court specifically did not decide whether the remedy of immediate suppression would be available if the interception had been done pursuant to an improperly issued court order, good faith reliance upon which constitutes, under section 2520 *254 of title 18 of the United States Code, a "complete defense to any civil or criminal action”. Since the facts pertaining to the possible existence of a court order were not before it, the court left this question open to the District Court on remand for further proceedings (408 US at p 61, n 22). It is clear, however, that at least five of the Justices would not have required suppression proceedings at the Grand Jury stage where the Government produces a court order for the eavesdropping. Wrote Mr. Justice White, who supplied the decisive vote of the 5-4 majority, in a concurring opinion (p 70): "Where the Government produces a court order for the interception, however, and the witness nevertheless demands a full-blown suppression hearing to determine the legality of the order, there may be room for striking a different accommodation between the due functioning of the grand jury system and the federal wiretap statute. Suppression hearings in these circumstances would result in protracted interruption of grand jury proceedings. At the same time, prosecutors and other officers who have been granted and relied on a court order for the interception would be subject to no liability under the statute, whether the order is valid or not; and, in any event, the deterrent value of excluding the evidence will be marginal at best. It is well, therefore, that the Court has left this issue open for consideration by the District Court on remand.”
Further delineation of the rights of Grand Jury witnesses who had been subject to eavesdropping was forthcoming in later decisions. In People v De Salvo (32 NY2d 12), the defendant had refused to answer questions before a Grand Jury on Fifth Amendment grounds after having been given full immunity, and was indicted for criminal contempt. Prior to trial he moved to dismiss the indictment on the ground that his appearance before the Grand Jury was the product of an illegal search of his person and automobile, facts which the People conceded. The motion to dismiss was denied on the ground that the defendant had refused to testify solely because of possible self-incrimination and that the grant of immunity precluded any challenge to the contempt charges based upon an illegal search. The Court of Appeals affirmed the defendant’s conviction, rejecting in the process his reliance on Gelbard v United States (supra), noting (p 15): "The [Gelbard] court never reached the question whether the Fourth Amendment would shield a Grand Jury witness from a contempt charge for conduct before the Grand Jury”, and *255 concluding (p 16): "[I]t was the Omnibus Crime Control Act, and not the Fourth Amendment that compelled the result in the Gelbard case”. The court then held that in this case the defendant had not preserved the Fourth Amendment issue because he failed to refuse to testify on that ground before the Grand Jury, and had thereby gained the valuable benefit of transactional immunity.
In United States v Calandra (414 US 338), the court confronted questions dealing with the Fourth Amendment rights of Grand Jury witnesses unanswered in Gelbard (supra) and De Salvo (supra) . The court held that a Grand Jury witness who refused to answer questions on Fourth Amendment grounds had no right to an immediate suppression hearing, ruling that while questions based upon Fourth Amendment violations do constitute a derivative use of illegally obtained evidence, and are therefore subject to the prohibition of the exclusionary rule, the appropriate remedy is suppression prior to trial if and when the witness who has been the victim of an illegal search is subsequently prosecuted. Significantly, the court (p 348) expressed the view that the exclusionary rule "is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved”, and that "the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons.” "As with any remedial device”, stated the court, "the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served.” The court then concluded (p 350) that the increased deterrent effect of extending the exclusionary rule to Grand Jury proceedings would be minimal, while "allowing a grand jury witness to invoke the exclusionary rule would unduly interfere with the effective and expeditious discharge of the grand jury’s duties.”
In Matter of Persico (491 F2d 1156), the court had occasion to consider the question the Supreme Court remanded for consideration by the District Court in Gelbard. In Persico a Grand Jury witness was taken before a District Judge on his claim that he was entitled to a plenary hearing on his Fourth Amendment objections to questions posed by the Grand Jury. The Government conceded that the questioning was derived from electronic surveillance but contended that the surveillance was conducted pursuant to court orders. The Judge *256 inspected the orders in camera, found them to be proper, and ordered the witness to testify. When the witness, upon his return to the Grand Jury, persisted in his refusal to testify on Fourth Amendment grounds, the Judge summarily held him in civil contempt. Affirming the contempt order, the Second Circuit approved the procedure of inspecting the surveillance orders as (p 1162) "all that [the witness] was entitled to receive”. The court held (p 1162) that a witness who objects to questions as the product of illegal electronic surveillance may refuse to testify "only if there is an absence of a necessary court order or if there is a concession from the Government that the surveillance was not in conformity with statutory requirements or if there is a prior judicial adjudication that the surveillance was unlawful.” In People v Einhorn (35 NY2d 948, revg 45 AD2d 75), the court, in a Per Curiam opinion, adopted the Persico-like procedure of an inquiry by the Presiding Justice when section 2515 is invoked at the Grand Jury stage. The court also stated that the contempt power could not be used to compel testimony or punish a witness for his "silence” to questions based upon eavesdropping which is "illegal”, citing section 2515 of title 18 of the United States Code.
From the foregoing review it is possible to distill several principles which bear upon the instant case. A Grand Jury witness who claims to be the subject of illegal eavesdropping has the right to an inquiry by the sitting Justice into the existence of any eavesdropping that may be the source of the questioning and the authorization, if any, for it. If the People affirm that eavesdropping has taken place without a court order or with a court order that has been previously adjudicated to be invalid or is conceded to be invalid by the People, the witness is entitled to immediate suppression of questions derived from such eavesdropping. If the People deny the existence of eavesdropping, the inquiry is generally at an end (but see People v Cruz, 34 NY2d 362, regarding the prosecutor’s obligation to make inquiry of other law enforcement agencies). If the People affirm that there has been eavesdropping and present court orders which are deemed to be valid upon inspection by the Justice, the inquiry is similarly at an end. In these latter instances, the witness must return to the Grand Jury and answer questions or risk possible civil or criminal contempt charges. If indicted, the witness who refuses to testify on Fourth Amendment grounds preserves the *257 right to suppress his testimony prior to trial. If the witness elects to testify, however, thereby gaining transactional immunity, he may not subsequently assert the nullity of the questioning on some ground not previously raised.
In the instant case, the defendant elected to answer the questions, albeit "under protest” of the fact that he was not afforded an immediate suppression hearing, a remedy he was not entitled to receive. He never refused to testify on Fourth Amendment or any other grounds, and automatically received transactional immunity by answering. (CPL 190.40.) Thus, he elected to testify before the Grand Jury and, having done so, he must owe that body the same obligations of forthrightness and candor as any witness, and be subject to the contempt and perjury sanctions if he violates those obligations. To permit any other rule allows a mockery of the proceedings at best, and at worst may seriously undermine the search for the truth. The latter is especially true where, as here, the alleged evasion occurs within the context of other, more forthright testimony.
Even if the ground for defendant’s protest before the Grand Jury had been a claim of illegal wiretapping, or if his request for a suppression hearing was now to be considered as such a claim, the proper course for him to have taken in order to preserve the objection was a categorical refusal to answer. Unlike a categorical refusal to testify on legal grounds, contumacious evasion manifests a distinctive intent to both mislead and obstruct the Grand Jury in the performance of its function (Ex parte Hudgings, 249 US 378, 383). Such conduct is wholly independent of the source of any questioning and is, therefore, not tainted by it (People v Mendez, 28 NY2d 94, 98; People v Munger, 24 NY2d 445, 453, judgment mod after hearing 37 AD2d 950, app dsmd 33 NY2d 576; cf. People v Martinez, 37 NY2d 662). As with the crime of perjury, with which it shares the element of falsity (Ex parte Hudgings, supra; People ex rel. Valenti v McCloskey, 6 NY2d 390, 398-399, supra) contumacious evasion cannot be excused by events which lead to the witness’ appearance before the Grand Jury (Matter of Nigrone v Murtagh, 46 AD2d 343, affd 36 NY2d 421; cf. Harris v New York, 401 US 222; Walder v United States, 347 US 62).
Section 2515 (US Code, tit 18, § 2515) does not provide a defense to this kind of contempt action. As previously seen, section 2515 prohibits the introduction of "evidence derived” *258 from interceptions, the "disclosure” of which would be criminally or civilly actionable. The defendant’s allegedly evasive testimony before the Grand Jury, being the result of his own independent conduct, may not be said to be "evidence derived” from eavesdropping. Also, the existence of court orders, which insulate him from liability (US Code, tit 18, § 2520), precludes his testimony from constituting actionable "disclosure”.[3]
A last point is defendant’s contention that a conviction cannot be had herein under the definition of the crime itself because questions derived from eavesdropping which is legally insufficient are not "legal” within the requirement that the contumacious refusal be to a "legal and proper interrogatory” (Penal Law, § 215.51). This contention, it is claimed, finds support in dictum contained in the following passage from People v Ianniello (36 NY2d 137, 145) in which the court, in the process of holding that the element of "legality” presented a question of law for the Trial Judge, stated "In People v Ianniello (21 N Y 2d 418, cert. den. 393 U.S. 827, supra), 'proper’ questions were described as those pertinent and relevant to the scope of the Grand Jury’s investigation (p. 426). 'Legal’ questions are those which are 'proper’, and which do not contravene any testimonial privilege of the witness or his privilege against self-incrimination (see pp. 424-425; see, also, Matter of Barnes, 204 N. Y. 108, 125; People v. McAdoo, 45 Misc 2d 664, 667, affd. 51 Misc 2d 263, cert. den. 386 U. S. 1031, supra). 'Legal’ could also refer to questions concededly not based upon tainting illegal sources (see, e.g., U.S. Code, tit. 18, § 2515; People v Einhorn, 35 N Y 2d 948).”
It must be considered highly doubtful that the cryptic and conditional last sentence quoted above was intended to extend the traditional definition of "legal interrogatory” contained in the preceding language into a kind of built-in exclusionary rule which makes issues of constitutional admissibility a statutory element. To do so would be an unprecedented departure from all previous thinking on the subject. In an earlier opinion in the same case (People v Ianniello, 21 NY2d 418, 423), the court held that questions which violated a Grand *259 Jury witness’ Fifth Amendment rights gave the witness the remedy of suppression in a prosecution for a previously committed substantive crime but did not endow him with a license to commit perjury or contempt "particularly when * * * the contempt involves answers 'so false and evasive as to be the equivalent to no answer at all’”. And in People v De Salvo (32 NY2d 12, supra), the court obviously viewed the "taint” question as one of constitutional admissibility when it held that the defendant was properly convicted of contempt after he had forfeited his Fourth Amendment claim by not raising it until he had received immunity. It is apparent, then, that the court’s citation of section 2515 and the Einhorn case (35 NY2d 948, revg 45 AD2d 75, supra) indicate that questions based on unauthorized eavesdropping, which, as has been seen, a Grand Jury witness need never answer, are not "legal” interrogatories under the contempt statute, while questions based upon evidence that is suppressible at trial are "legal”, though subject to the remedy of exclusion where appropriate (United States v Calandra, 414 US 338, supra).
Defendant’s contention that the questions asked of him were not "legal” also falls with the realization that contumacious evasion is usually (as is the allegation here) a course of conduct made up of a series of unresponsive, elusive or equivocal answers. Thus, the tainted source of the first question may be said to dissipate as the evasion builds toward contempt.
For the foregoing reasons, defendant’s motion to suppress his Grand Jury testimony and dismiss the indictment is denied.

. One count of the original two-count indictment was dismissed pursuant to People v Renaghan, 33 NY2d 991, upon inspection of the Grand Jury minutes by another Justice of this court.

. In view of this determination, I find it unnecessary to consider defendant’s contention that the warrant itself contained various technical deficiencies in certain provisions pertaining to its execution. “

. CPLR 4506, cited by the defendant, is similarly unavailing. CPLR 4506 (subd 1) prohibits the introduction before "any court or grand jury” of any "evidence derived” from conduct constituting the crime of eavesdropping under section 250.05 of the Penal Law. For reasons already stated, the defendant’s alleged evasive testimony is not "evidence derived” from eavesdropping. Moreover, section 250.05 of the Penal Law only makes it a crime to engage in electronic eavesdropping activity which is without court authorization (see Penal Law, § 250.00, subd 3).