OPINION OF THE COURT
George J. Balbach, J.
The Special Prosecutor moves to punish respondent for contempt of court in that he failed to comply with a subpoena duces tecum. Respondent cross-moves to quash the subject subpoena duces tecum and seeks his own order of contempt.
The facts are as follows: A subpoena duces tecum, dated June 26, 1979, was served on respondent and required that he produce all of his income tax records from 1966 through 1978 along with supporting documents before a Queens Grand Jury on July 13, 1979. Respondent failed to produce his tax records before the Grand Jury on that date and petitioner now seeks to punish for willful disobedience to a lawful mandate pursuant to section 750 (subd A, par 3) of the Judiciary Law.
The respondent alleges that he attempted to comply with the subpoena but was denied his right to explain his position to the Grand Jury or raise a claim of privilege.
In addition, respondent maintains that since he has already been served with approximately five other subpoenaes and delivered several thousand items of documentation to the Grand Jury, the present request is cumulative in nature and constitutes legal harassment. Respondent now seeks to quash the present subpoena and terminate his appearances before the Grand Jury.
As regards the Special Prosecutor’s contempt motion, this court must take judicial note of the fact that the order to show cause to punish respondent for failing to deliver documents on July 13 was verified on July 12, 1979. In other words, the Special Prosecutor’s motion was premature in that the alleged contempt had not yet been committed. While *352 foresight has its values, it cannot be deemed a legal substitute for the completed, willful act which is clearly required by statute. “For a contempt citation to be warranted, all elements, including * * * willful disobedience thereof, must be demonstrated beyond a reasonable doubt” (Matter of Davis, 88 Misc 2d 938, 940; Yorktown Cent. School Dist. No. 2 v Yorktown Congress of Teachers, 42 AD2d 422). Since it is legally impossible to punish a party for anticipated contempt, the Special Prosecutor’s application must be denied on a technical ground.
Turning to respondent’s cross motion, it is clear that a Grand Jury is entitled to every man’s evidence. Once a subpoena duces tecum is issued and a witness feels that all of the documents sought are validly privileged, he is, in effect, challenging the validity of the subpoena itself. The proper remedy is a motion to quash since such a motion "is limited in scope, challenging only the validity of the subpoena or the jurisdiction of the issuing authority” (Matter of Santangello v People, 38 NY2d 536, 539). Further, such a motion should be made promptly and, in any case, prior to the return date (Matter of Santangello v People, supra, p 539).
In the case at bar, this court will consider the cross motion on its merits in order to prevent further delay in the Grand Jury’s deliberations.
Respondent first challenges the subpoena on the grounds of prosecutorial misconduct. He maintains that he appeared before the Grand Jury on the designated day and believed, on the advice of his counsel, that he was not legally obliged to turn over the required tax documents. He desired to make a statement to the Grand Jury explaining why he failed to comply with the subpoena. He maintains that the Special Assistant Attorney-General immediately curtailed questioning and thus denied him the right to place his objections on record.
The issue before this court deals with the proper method of raising objections under a subpoena duces tecum once a witness appears before a Grand Jury.
In considering this question, it is obvious that the representative of the State, as the legal advisor of the Grand Jury, has the obligation of conducting an investigation and drawing forth relevant facts from a witness. The standard method of permitting a witness to raise objections to a particular question was set forth in People v De Salvo (32 NY2d 12). In that *353 case, the court held (pp 16-17): "The proper procedure to be followed in challenging the propriety of Grand Jury questions was outlined or plainly implied in People v. Ianniello (21 N Y 2d 418, 424-426, cert. den. 393 U. S. 827). There, the court stated that a witness should be permitted to consult his lawyer if he questions the extent of immunity conferred, the relevancy of the questions, or the existence of a testimonial privilege. If the witness then believes he is entitled to avoid testifying on a specific ground, he should refuse to answer and continue to assert his right, thereby forcing the prosecutor to take the issue into open court for a ruling (see, also, United States v. Calandra, 465 F. 2d 1218, 1221, supra [6th Cir.], where such a procedure was followed).”
The People contend that the procedure set forth in De Salvo applies only to a subpoena ad testiñeandum; that case involved a contempt proceeding in which a witness raised a defense that was never mentioned during the actual Grand Jury proceeding. The prosecutor distinguishes the De Salvo case from the present one by stating that in the instant case the witness appears merely in a custodial role as a bearer of documents and the fact that he does not present the documentation to the Grand Jury clearly places on the record that he objects to same. The People contend that, at such point, the matter should be brought before the court for a legal hearing as to the reasons for his failure to present the required records and a prompt resolution thereof in order to permit the Grand Jury to continue on its legitimate business.
The State cites Curcio v United States (354 US 118) to support its position. In that case, the witness was a union treasurer, served with a personal subpoena ad testiñeandum. In addition, he was served with a subpoena duces tecum to produce union books and records. During the course of the Grand Jury deliberations, the witness was asked 15 questions relating to the whereabouts of the union’s records which he failed to produce pursuant to the subpoena. Ultimately the witness’ evasive answers led to a charge of criminal contempt. The Supreme Court reversed this finding, holding that when the Government sought to compel the witness to disclose, by his oral testimony, the whereabouts of the books, such questioning infringed on his personal right to privacy and he was granted a privilege of immunity, as to these records. Hence, he could not be held in contempt.
This court has considered the arguments on both sides *354 and upon reflection feels that the People’s position is the more valid. The court reaches this conclusion upon an examination of CPL 190.40, particularly paragraph (c) of subdivision 2 which states that: "A witness who gives evidence in a grand jury proceeding receives immunity unless * * * (c) the evidence given by the witness consists only of books, papers, records or other physical evidence of an enterprise, as defined in subdivision one of section 175.00 of the Penal Law, the production of which is required by a subpoena duces tecum * * * Any further evidence given by the witness entitles the witness to immunity” (emphasis supplied). Considering this section in light of the Curdo case (supra), it is clear that if a prosecutor permitted a witness to give a statement containing factual matters as to documents he fails to produce, he runs a risk of eliciting "further evidence” and voiding the nonimmunity restriction of CPL 190.40 (subd 2, par [c]). A thorough reading of People v De Salvo (32 NY2d 12, supra) indicates that the procedure outlined there was mainly for the purpose of alerting the prosecutor to a legal objection. In dealing with a subpoena duces tecum, this court concludes that substantial justice can be done by allowing a witness simply to state on the record that he has failed to produce the required documents on the grounds of legal privilege. At most, he can give a simple statement as to the nature of this privilege but he has no right to go into any factual basis (cf. People v Zelmanowicz, 93 Misc 2d 491). By his failure to produce the required documents, he has raised an issue on noncompliance and this matter can be immediately brought "into open court for a ruling” (People v De Salvo, supra, p 16). The witness has no right to place his views on record since the Grand Jury is in no position to determine the legal validity of such arguments. This is strictly a matter of law to be resolved at a hearing. Hence, this court finds no prosecutorial abuse in terminating a witness’ testimony before the Grand Jury.
This court now turns to the legal privileges claimed when there exists a danger of the witness obtaining involuntary immunity.
Basically, these contentions are twofold. The first is that the witness has a "personal right to privacy” superior to a Grand Jury right to invade one’s privacy; the second is that the income tax returns sought are not relevant to the Grand Jury’s investigation and in any event are joint returns signed by both the respondent and his wife.
Taking up the first claim, this court finds it without *355 merit. The public has a right to every man’s evidence and this duty is particularly applicable to Grand Jury proceedings (Branzburg v Hayes, 408 US 665, 682). Such a duty has long been recognized as a basic obligation that every citizen owes his Government (Blackmer v United States, 284 US 421, 438). In addition, "[t]he duty to testify may on occasion be burdensome and even embarrassing. It may cause injury to a witness’ social and economic status. Yet the duty to testify has been regarded as 'so necessary to the administration of justice’ that the witness’ personal interest in privacy must yield to the public’s overriding interest in full disclosure” (United States v Calandra, 414 US 338, 345). Therefore, this court finds that the witness does not possess a personal right of privacy superior to the Grand Jury’s right of inquiry.
The second argument deals with the relevancy of the income tax returns. It is clear that these financial records would have a bearing on the investigation now being conducted and are relevant to the Grand Jury’s inquiry. In addition, since the witness has received a grant of immunity, he may not claim that his right of self incrimination is being violated (Matter of Second Additional Grand Jury of County of Kings, 234 NYS2d 64, 66).
As for the contention that the witness’ wife’s rights are being violated since her signature is also on the requested documents, this court can only point out that the question of privilege is personal to each individual and may be raised only by the aggrieved party (cf. United States v Miller, 425 US 435). Since the witness’ wife has not appeared in this action, this court will not rule on whether or not she possesses a privilege. Sufficient to say that any right that the wife may have in her own name, will have no bearing on the validity of the subpoena affecting the respondent in the present action.
Finally, this court has considered the respondent’s application for1 a contempt citation against the Assistant Special Prosecutor. While the court notes premature overzealous conduct, it finds no deliberate prosecutorial abuse, hence no grounds to issue same. The cross motion in this respect is consequently denied.
Therefore, based upon the foregoing, the People’s application to punish the respondent for contempt is denied without prejudice; the cross motion to quash the subpoena is also denied. The respondent is directed to produce his income tax returns and the supporting papers before the Grand Jury.