OPINION OF THE COURT
Kristin Booth Glen, J.
This sentencing proceeding follows a finding of civil and criminal contempt against Clinton W. Blume, Jr., in an opinion dated June 24, 1982. On July 1, 1982, a hearing was held at which Blume and those respondents affected by his contempts were to speak. After all parties were heard, the contemnor was sentenced to 25 days’ imprisonment for the criminal contempt, and 30 days’ imprisonment for the civil contempt, the sentences to run concurrently. This opinion is written to explain those sentences, and to offer an explication which may clarify the muddled area of civil and criminal contempt.
While it is clear that the Civil Court and its Housing Part have the power to hold landlords in civil and criminal *897 contempt for the failure to obey lawful court orders involving the furnishing of essential services, the differences between contempts (e.g., Hazard v Jeremias, NYLJ, March 3, 1982, p 13, col 4), and particularly the sanctions which may be imposed for each, are not entirely clear.
The purpose of a criminal contempt is, of course, to punish the contemnor for his contempt of the court, i.e., the disrespect and disobedience shown for refusal to obey a court order which constitutes an offense against public justice (e.g., King v Barnes, 113 NY 476). Civil contempt, on the other hand, results from harm done to the parties to a litigation by the contemnor’s disobedient acts or omissions (e.g., People ex rel. Munsell v Court of Oyer & Terminer of County of N. Y., 101 NY 245). The differences in injuries addressed are mirrored by procedural differences including service requirements[1] and standards of proof.[2] The sentencing provisions are also governed by separate sections of the Judiciary Law.
Criminal contempt may be punished by imprisonment not exceeding 30 days in the jail of the county where the court is sitting[3] or a fine not exceeding $250, or both. (Judiciary Law, § 751, subd 1.) Sanctions for civil contempt are contained in two separate sections, one dealing with monetary sanctions, or fines, the other with imprisonment. The apparent difference in intent expressed in these two sections has raised questions among Judges and litigants in the trial courts concerning the punitive power of the court in civil contempt.
The fine provision, section 773, provides for a fine in an amount which will compensate the parties injured by the *898 contempt for their injuries or, if no such amount can be determined, a fine of $250 plus costs and expenses.[4] In a nonhousing case, the Court of Appeals held that individual fines of $250 for each individual act of contempt are not permitted, since such aggregated fines would’ be punitive, rather than compensatory. (State of New York v Unique Ideas, 44 NY2d 345.) The Appellate Division has reversed the aggregation of fines for housing violations in a civil contempt proceeding,[5] relying on the punitive/compensatory distinction of Unique Ideas (Thompson v Scocozza Studio Assoc., 86 AD2d 830). At least one commentator has concluded from this use of cases that since section 773 is compensatory in nature, “[i]t is presumably the criminal contempt remedy whose mission it is to punish the offender”. He goes oh, however, to decry the fact that “the remedy for criminal contempt in New York * * * lacks teeth in most situations”. (Siegel, New York Practice, § 482, 1982 Supp, p 92.) Thus it might be argued that imprisonment, like fines, may not be used punitively in a civil contempt, but only for the purpose of coercing compliance — i.e., the analog of compensating the injured party. In other words, punitive jailing would be limited to a maximum of 30 days where criminal contempt had been found, while imprisonment would be used coercively — that is, until the contemner complied with the court’s order — in civil contempt.[6]
Such argument, although appealing in its symmetry, is not borne out by the statutory scheme. Section 774 which contains the imprisonment sanctions for civil contempt clearly distinguishes between coercive and punitive confinement, and allows both. The statute reads:
*899 “Sec. 774. Length of imprisonment and periodic review of proceedings
“1. Where the misconduct proved consists of an omission to perform an act or duty, which is yet in the power of the offender to perform, he shall be imprisoned only until he has performed it, and paid the fine imposed, but if he shall perform the act or duty required to be performed, he shall not be imprisoned for the fine imposed more than three months if the fine is less than five hundred dollars, or more than six months if the fine is five hundred dollars or more. In such case, the order, and the warrant of commitment, if one is issued, must specify the act or duty to be performed, and the sum to be paid. In every other case, where special provision is not otherwise made by law, the offender may be imprisoned for a reasonable time, not exceeding six months, and until the fine, if any, is paid; and the order, and the warrant of commitment, if any, must specify the amount of the fine, and the duration of the imprisonment.”
Thus, coercive imprisonment is unlimited in time (e.g., People ex rel. Feldman v Warden of N. Y. City Correctional Inst. for Women, 46 AD2d 256, affd 36 NY2d 846), while punitive imprisonment is limited to six months. In reaffirming the statute’s distinction between — and authorization for — coercive and punitive confinement, Siegel notes that “[punitive] jailing is not necessarily alternative, but can be additional, to a compensatory fine”. (Siegel, New York Practice, § 482, p 646.)
Based on the clear language of the relevant provisions of the Judiciary Law,[7] this court must conclude that what Siegel refers to as an “astounding situation”, that is, longer imprisonment based on a lesser burden of proof for civil (rather than criminal) contempt is indeed the case. However, because of the particular circumstances of the instant *900 case, in which the contemner has been found in both civil-criminal contempts, and where I find differing punishments just and appropriate for the injuries caused — to public justice and to the litigants — the appellate courts may have an opportunity to speak on this matter. Such guidance will end existing confusion and aid the ability of the trial courts to handle those civil contempts which have, unhappily, particularly in the Housing Part, become an increasingly significant part of our case load.

. In a criminal contempt, the alleged contemnor must be personally served with the order to show cause which brings on the proceeding. (People v Balt, 34 AD2d 932; State of New York v International Conference of Police Assns., 98 Misc 2d 1052.) In a civil contempt, service should be made on the respondent but the court may order service on respondent's attorney (cf. People ex rel. Golden v Golden, 57 AD2d 807).

. To hold a person in criminal contempt, the court must find the necessary elements beyond a reasonable doubt (see, e.g., Matter of Hynes v Doe, 101 Misc 2d 350). Civil contempt requires a finding of “reasonable certainty” (see, e.g., Panza v Nelson, 54 AD2d 928; State ex rel. Porter v Porter, 33 AD2d 876).

. This is also a potential conflict since, for example, there is no civil jail in New York, Kings, Bronx or Richmond Counties, but there is in Queens County, where civil contemnors are routinely held.

. Reasonable counsel fees may be properly included in the “costs and expenses” permitted by the statute (e.g., Bennett Bros. v Bennett Farmers Market Corp., 16 AD2d 897).

. Aggregated fines for housing violations may, however, be sought by Housing Preservation Department and tenants in proceedings authorized by subdivision (a) of section D26-51.01 of the Administrative Code of the City of New York. Presumably the specific findings of noncompliance with the court’s order to correct violations would be res judicata in such separate proceedings.

. Two old cases, clearly distinguishable on their facts, contain at least a suggestion that this is the case. (See Ditomass v Loverro, 242 App Div 190; People ex rel. Peirce v Brice, 62 App Div 593.)

. There is a final note of ambiguity in the statute. One might read the statute as intending imprisonment to be limited to the end of coercing payment of a fine, but for the clear qualification in the statute, i.e., the reference to imprisonment until the fine if any is paid. The instant case demonstrates graphically the legislative intent that provision be made for punitive imprisonment in the absence of any imposition of a fine. Because I have found that a fine would serve no purpose here, no fine has been imposed. Accordingly, punitive imprisonment within the six-month statutory limit has been imposed, and stands independent of the matter of a fine or its payment.