N. A. DEVELOPMENT CO., LTD., et al., Appellants, v CAROLYN JONES et al., Respondents.

First Department, February 28, 1984

APPEARANCES OF COUNSEL

*Jill R. Botway* of counsel (*David B. Chenkin* with her on the brief; *Ryan & Silberberg,* attorneys), for appellants.

*Janessa C. Nisley* of counsel (*Bruce Kramer,* attorney), for Department of Housing Preservation and Development, respondent.

OPINION OF THE COURT

SILVERMAN, J.

Petitioner appellant Clinton W. Blume, Jr., individually (hereinafter appellant) has been adjudicated to be in criminal and civil contempt for the same misconduct, and has been sentenced to definite terms of imprisonment of 30

days for the civil contempt and 25 days for the criminal contempt, sentences to run concurrently.

This contempt proceeding and these sentences are based on the failure of appellant, a landlord of residential premises, to remedy or make any effort to remedy violations relating to the habitability of the premises despite orders of the court directing him to do so.

We affirm as to the criminal contempt.

Although the property was held in the name of a corporation, it is clear that the corporation was, as appellant himself said, "just a name to hold the property". It had no bank account. Such financial transactions as took place were treated as appellant's individual transactions. During the period of the alleged contempt, May 13, 1981 to November 4, 1981, he was in sole control of the property, the managing agent having resigned. He was president and sole stockholder of the nominal owning corporation. He was clearly an "owner" within the statutory definition of subdivision 44 of section 4 of the Multiple Dwelling Law and subdivision 45 of section D26-1.07 of the Administrative Code of the City of New York, being a person " '*directly or indirectly in control of a dwelling*' ". (*Housing & Dev. Admin. v Johan Realty Co.*, 93 Misc 2d 698, 700.) Pursuant to CCA 110 (subds [c], [d]), he was added as a party to this summary eviction proceeding. The order of May 13, 1981, for violation of which he was held in contempt, is explicitly directed to him by name, and contains an explicit warning that failure by him to correct the violations listed would subject him (as well as the corporation) to the contempt power of the court.

The court (114 Misc 2d 896), applying the standard appropriate to criminal proceedings, proof beyond a reasonable doubt, found that he willfully violated the order and was thus in criminal contempt.

The punishment for the civil contempt however, presents some rather perplexing problems. Before the contempt hearing and imposition of the punishments, an administrator was appointed under RPAPL 778, so that thereafter and continuing to this date appellant has been without power to remedy the violations or do anything in relation to the premises. The incarceration is avowedly simply

punitive, for the purpose of punishing the appellant. It is not coercive, i.e., in the sense of coercing the appellant to comply with the order or remedy the damage caused by his contempt.

Imposing a civil contempt sanction as a solely punitive measure is in a sense an aberration from the generally recognized distinction between criminal and civil contempt and the function of civil contempt. As the Court of Appeals recently said: "Civil contempt has as its aim the vindication of a private right of a party to litigation and *any penalty imposed upon the contemnor is designed to compensate the injured private party for the loss of or interference with that right* (*State of New York v Unique Ideas,* 44 NY2d 345). Criminal contempt, on the other hand, involves vindication of an offense against public justice and is utilized to protect the dignity of the judicial system and to compel respect for its mandates (*King v Barnes,* 113 NY 476). Inasmuch as the objective is deterrence of disobedience of judicial mandates, the penalty imposed is punitive in nature" (*Matter of McCormick v Axelrod,* 59 NY2d 574, 582-583; italics added). Consistently with this distinction subdivision 1 of section 774 of the Judiciary Law provides with respect to civil contempt: "Where the misconduct proved consists of an omission to perform an act or duty, which is yet in the power of the offender to perform, he shall be imprisoned only until he has performed it, and paid the fine imposed".

Where it is in the power of the offender to perform the act directed, it is immaterial that he may be imprisoned for a long time, for he has it in his power to perform the act ordered. "If imprisoned, as aptly said in *In re Nevitt,* 117 Fed. Rep. 451, 'he carries the keys of his prison in his own pocket.' He can end the sentence and discharge himself at any moment by doing what he had previously refused to do." (*Gompers v Bucks Stove & Range Co.,* 221 US 418, 442.) In the *Gompers* case (*supra,* p 444) the Supreme Court said that a wholly punitive sentence can be imposed only in a proceeding instituted and tried as for criminal contempt.

But subdivision 1 of section 774 of the Judiciary Law goes on to provide that "In every other case" there may be a

sentence of imprisonment not exceeding six months and until the fine, if any is paid, i.e., if the offender cannot perform the act ordered, he may still be imprisoned for up to six months. That is the authoritative interpretation of section 774 of the Judiciary Law and its predecessors.

In *People ex rel. Munsell v Court of Oyer* (101 NY 245, 247-248) the court, discussing the predecessor statute to section 774 of the Judiciary Law, said with respect to punishment for civil contempt: "The imprisonment, where the act or duty can yet be performed, must end with the performance of the act and payment of the fine; but if the act or duty cannot be performed, then the imprisonment must not exceed six months and until the fine be paid. In this last provision there is a trace of the element of punishment, but it is for the violation of the private right of the party and to check similar violations in the future, and has no respect to public offenses or the vindication of public wrongs." (Accord *King v Barnes,* 113 NY 476, 480-481; *Stewart v Smith,* 186 App Div 755, 759; *Wides v Wides,* 96 AD2d 592, 594; *Ditomasso v Loverro,* 242 App Div 190, 194.)

We do not think the language we have quoted from *Matter of McCormick v Axelrod (supra)* can fairly be read to overrule this established interpretation of section 774 of the Judiciary Law as permitting a wholly punitive sentence of imprisonment up to six months in civil contempt where it is no longer within the offender's power to comply with the original direction.

The result however, particularly in the comparison between criminal contempt and civil contempt, is incongruous. For criminal contempt the maximum period of imprisonment is 30 days (at least in contempt proceedings under the Judiciary Law) (Judiciary Law, § 751, subd 1). For civil contempt, where it is no longer within the power of the offender to perform so that the sentence is punitive, the imprisonment may be up to six months. In the ordinary meaning of the terms, a "criminal" offense is a graver offense than a civil offense and should be punished more severely. Again, "the element which serves to elevate a contempt from civil to criminal is the level of willfulness

with which the conduct is carried out": (*Matter of McCormick v Axelrod,* 59 NY2d, at p 583.)

Criminal contempt must apparently be proved beyond a reasonable doubt. (*Gompers v Bucks Stove & Range Co.,* 221 US, at p 444; *Bloom v Illinois,* 391 US 194, 205.) Civil contempt requires proof "with reasonable certainty". (*Matter of McCormick v Axelrod, supra,* at p 583; *Matter of Hynes v Hartman,* 63 AD2d 1, 3-4.)

We note also that serious doubt has been cast upon the constitutionality of the provisions of section 774 of the Judiciary Law insofar as they permit sanctions in civil contempt proceedings that "are neither remedial nor coercive, but punitive." (*Vail v Quinlan,* 406 F Supp 951, 960, revd on other grounds *sub nom. Juidice v Vail,* 430 US 327.)

In the circumstances, we think the extraordinary power — extraordinary even for contempt cases — to impose wholly punitive sanctions for civil contempt should be exercised only very cautiously and where the necessity is clear. In the present case, where the court found appellant guilty of criminal contempt and imposed almost the same sentence upon him for civil contempt as it thought appropriate for criminal contempt, we think it was an improper exercise of discretion to impose a wholly punitive sanction of imprisonment for the civil contempt.

To begin with, we are unable to appreciate the nice calculus by which the court was able to say that the appropriate penalty for the same acts was 25 days imprisonment considered as a criminal contempt, and 30 days imprisonment considered as a civil contempt.

As the trial court found appellant guilty of criminal contempt, applying the appropriate standard of proof beyond a reasonable doubt, and thought the appropriate punishment for the criminal contempt was substantially the same as that for the civil contempt, we do not see what useful purpose was served by imposing the punitive sentence for civil contempt.

The court was exercising an aberrant and extraordinary provision of the statute, whose constitutionality has been seriously challenged, in a case where there was no neces-

sity to do so because the criminal contempt punishment was available and appropriate. The punitive sentence for civil contempt was thus an abuse of discretion in the circumstances. (See *Matter of Planning Bd. v Zoning Bd. of Appeals,* 75 AD2d 686, 687.)

Order, Supreme Court, Appellate Term, First Department, entered October 29, 1982 affirming order of New York City Civil Court, County of New York, Housing Part (K. B. GLEN, J.), entered July 1, 1982 adjudging petitioner-appellant Clinton W. Blume, Jr., individually to be in both criminal and civil contempt, and directing his commitment for 30 days on the civil contempt and 25 days on the criminal contempt, to run concurrently, should be modified, on the law and the facts, and in the exercise of discretion, to the extent of reversing and vacating the commitment for civil contempt, and the order otherwise affirmed, without costs.

SANDLER, J. P. (dissenting). I dissent and would affirm for the reasons set forth in the opinions of Judge GLEN at Civil Court (114 Misc 2d 896), and also for the reasons set forth in the memorandum opinion of the Appellate Term.

I agree that caution should be exercised in the usual case before imposing a noncoercive punitive jail sentence for civil contempt. This is not the usual case. The record establishes indisputably that innocent third parties — the tenants in petitioner's apartment building — lived under appalling conditions for a long period of time (including a nine months' absence of heat and hot water) as the result of petitioner's total failure to make any effort to respond to a court order directing him to repair numerous long-standing violations which were dangerous to the life and health of the tenants. It does not seem to me "incongruous" for the trial court to have concluded that the injury sustained by the tenants, the kind of event with which civil contempt is primarily concerned (Judiciary Law, § 753, subd A), justified the imposition of a 5-day jail sentence in addition to the 25-day sentence imposed for criminal contempt "to protect the dignity of the judicial system and to compel respect for its mandates" (see *Matter of McCormick v Axelrod,* 59 NY2d 574, 583).

This court's reliance on certain language in *Matter of McCormick* (*supra*) seems to me, in significant respects, misplaced. *Matter of McCormick* involved an application to hold certain public officials in contempt for violating a court order. The Court of Appeals concluded that the record did not support a finding of willfulness necessary under section 750 (subd A, par 3) of the Judiciary Law to hold these officials in criminal contempt, but went on to find that the record did support an adjudication of civil contempt under section 753 (subd A, par 3).

In here sustaining the trial court's criminal contempt adjudication, this court has found, and correctly so, that the evidence supports beyond a reasonable doubt the determination that the defendant had willfully disobeyed a court mandate. It follows a fortiori that the evidence also sustains defendant's adjudication for civil contempt, the only additional element required for that latter determination — prejudice to a right or remedy of a party to a civil action — being conclusively established.

The essential character of the error in this court's opinion seems to me illuminated by the comment that "[i]n the ordinary meaning of the terms, a 'criminal' offense is a graver offense than a civil offense". This observation is no doubt literally correct, but it is also without legal significance in the situation presented. Where, as here, the same willful disobedience of a court mandate constitutes both a criminal contempt and a civil contempt, the presence of the additional factor of a serious, here shocking, injury to innocent third parties of the kind to which subdivision A of section 753 is addressed, may very well render the civil contempt the more serious offense. Certainly I do not believe that this judgment by the trial court under the circumstances meticulously detailed in her opinions may fairly be characterized as an abuse of discretion.

I agree that the imposition of a noncoercive punitive jail sentence for civil contempt raises troublesome constitutional problems. The problem results from the development in the case law, without any explicit basis in the relevant statutory sections, of a standard of proof necessary to a finding of civil contempt that is less than proof beyond a reasonable doubt. I would not myself be inclined

to sustain a punitive jail sentence for a civil contempt where the evidence did not establish a willful contempt beyond a reasonable doubt.

The constitutional problem seems to me more theoretical than real in this case. The trial court found correctly that the evidence established a willful disobedience of a judicial mandate beyond a reasonable doubt. The remaining prerequisite for a civil contempt adjudication — injury to the rights of a party to a civil action — was not even an issue below, that injury being conclusively established.

Let me add one more comment. A study of the several statutory sections regulating criminal and civil contempt in light of the facts of this case confirms that these sections are long overdue for legislative review and revision. At a minimum there should be a single standard — proof beyond a reasonable doubt — for the imposition of a punitive jail sentence, whether the contempt be classified either as criminal or civil.

BLOOM and ALEXANDER, JJ., concur with SILVERMAN, J.; SANDLER, J. P., and FEIN, J., dissent in an opinion by SANDLER, J. P.

Order, Appellate Term, First Department, entered on October 29, 1982, modified, on the law and the facts, and in the exercise of discretion, to the extent of reversing and vacating the commitment for civil contempt, and the order is otherwise affirmed, without costs and without disbursements.