OPINION OF THE COURT
Lewis R. Friedman, J.
It has long been established that an offense against the *872 dignity of the court "should not go unpunished, if for no other reason than to deter others from the commission of like acts.” (Matter of Hopper, 9 Misc 171, affd 145 NY 605 [1895].) This case presents important questions, not previously addressed in the reported cases, on the punishment for civil and criminal contempt.
This proceeding was commenced by petitioners, residents of 168 East 24th Street (the premises), for an order pursuant to Administrative Code of the City of New York (Housing Maintenance Code) § D26-51.01 (h) directing the owners of the premises to remove certain violations and "conditions constituting violations”. The respondents are the owning corporation, its principal, Rose Hiller, and her son, Steven Hiller, an attorney with offices at the premises who is involved in its operation (collectively, the owners) and the Department of Housing Preservation and Development (DHPD). The premises is a single-room occupancy (SRO) rooming house.
The parties entered into four "interim” consent orders dated October 18, 1985 (two orders), November 15, 1985 and November 27, 1985, each of which set repair schedules, provided for increased security, and set forth standards for heat and hot water, cleaning and general maintenance. All work was to be completed no later than December 6, 1985.
THE CONTEMPT HEARING
Petitioners commenced the instant proceeding contending that the repairs done and the security provided wére not in accord with the orders and that numerous specific agreements had been violated. Petitioners seek civil and criminal contempt sanctions. The owners’ defense was that extensive repairs had been performed at the premises. The court, which had visited the premises with counsel for all parties prior to the signing of the last consent orders, conducted an extensive trial of the issues. There is no doubt whatever that the work was not performed as required by the court orders. Indeed, since the owners do not seriously contend that they are in compliance with the terms of the repair orders, the court need not summarize the testimony at length. Almost no work was accomplished before this contempt proceeding was commenced; much of the repair work was poorly done and had to be redone.
The owners attempted to establish that they had difficulty in gaining access to a few rooms, in part because the petition *873 ers would not move to other rooms during the repairs. The court credits the testimony of the tenants and concludes that there was no good-faith effort to gain access to the rooms on proper notice.
The security service provided violated the court orders and interfered with petitioners’ rights to enter the building and their right to have visitors unmolested by the "guards”. The complete failure to do the mandated repairs according to the schedule and the creation of new unsafe conditions establishes beyond question the willfulness of the owners’ conduct. The performance of many repairs which were not required by the orders at the expense of the mandated items further supports that conclusion. There is no doubt that the acts of the respondents have delayed, hindered, impaired and impeded the rights of the petitioners in this proceeding.
The court finds, beyond a reasonable doubt, that the respondents are each guilty of both criminal and civil contempt for their willful disobedience of the court’s orders of October 18, November 15 and November 27, 1985. (See, Judiciary Law § 750 [A] [3]; Matter of McCormick v Axelrod, 59 NY2d 574, 583.)
THE APPROPRIATE PENALTY
CIVIL CONTEMPT
The parties agree that the petitioners have not proven any actual damages as a result of the contempt; therefore, their recovery of a fine is limited. Judiciary Law § 773 provides, in pertinent part: "Where it is not shown that such an actual loss or injury has been caused, a fine may be imposed, not exceeding the amount of the complainant’s costs and expenses, and two hundred and fifty dollars in addition thereto, and must be collected and paid, in like manner.”
The reported decisions do not provide clear guidance as to the manner of computing the fine, that is whether separate fines are payable for each act of contempt and whether the same amounts are due to each petitioner. The distinction between civil and criminal contempt provides a starting point for analysis. The Court of Appeals recently held that a civil contempt penalty is imposed "to compensate the injured private party for the loss of or interference with that right (State of New York v Unique Ideas, 44 NY2d 345).” (Matter of McCormick v Axelrod, supra, at 583.) Thus, notwithstanding the willfulness of the acts, a civil contempt fine is limited to *874 damages "sufficient to indemnify the aggrieved party”. The courts have long held that in the absence of proof to the contrary "the actual damages must be regarded as not exceeding two hundred and fifty dollars” (Socialistic Coop. Pub. Assn. v Kuhn, 164 NY 473, 475 [1900]). (Indeed, the $250 contempt penalty first was set in 1829. See, 2 Rev Stat [2d ed], part III, ch III, tit I, § 11, at 207.)
The Appellate Term in this Department has held that multiple $250 penalties cannot be imposed where there is no proof of actual damages. The court has refused to allow multiplication of a fine by the number of separate housing code violations to preclude "awarding exemplary damages in a situation where compensatory damages have not been proven —a result at odds with the concept of civil contempt” (S.I. Realty Holding Corp. v Harris, NYLJ, Feb. 14, 1986, at 13, col 1; Department of Hous. Preservation & Dev. v Swett, NYLJ, June 11, 1984, at 7, col 3). It is not "compensatory” to multiply the fine by each of the four orders; similarly, it is not "compensatory” to multiply the fine by the number of sections of the orders which were violated. (See, State of New York v Unique Ideas, 44 NY2d 345, 350.) There is no doubt that the acts of the owners constitute a single breach of the court’s orders requiring repairs. (See, People v Chestnut, 26 NY2d 481, 491-492; People v Riela, 7 NY2d 571, 576.)
While the concept that $250 represents limited compensatory damages might lead to the conclusion that a separate $250 fine should be paid to each injured party (Santana v 144th St. Holding Corp., NYLJ, May 14, 1984, at 13, col 3 [App Term, 1st Dept]), the statutory language leads to the opposite result. Judiciary Law § 773 provides that in the case of proof of actual damages "a fine, sufficient to indemnify the aggrieved party” must be imposed; the emphasis is on the "aggrieved party”. Where no actual damages are shown, the fine to be imposed may not exceed expenses "and two hundred and fifty dollars in addition thereto”; thus the total added fine may not exceed $250. That result is consistent with State of New York v Unique Ideas (supra) and S.I. Realty Holding Corp. v Harris (supra) which emphasize that exemplary damages are prohibited under section 773. Accordingly, the court will impose a single $250 fine to be paid to the petitioners by the owners jointly and severally (see, Socialistic Coop. Pub. Assn. v Kuhn, supra).
Since petitioners are limited to a $250 fine, they are entitled to recover costs and expenses, including the fees reasonably *875 payable to their attorneys. (Judiciary Law § 773; see, e.g., Harwood Dimension & Mouldings v Consolidated Edison Co., 77 AD2d 644; Ellenberg v Brach, 88 AD2d 899, 902; Matter of Rothko, 84 Misc 2d 830, 886, mod on other grounds 56 AD2d 499, affd 43 NY2d 305.)
The court will conduct a hearing to determine the amount of costs and attorneys’ fees to be included in the civil contempt fines.
CRIMINAL CONTEMPT
The penalty for criminal contempt is determined by the nature of the offense. "Criminal contempt * * * involves vindication of an offense against public justice and is utilized to protect the dignity of the judicial system and to compel respect for its mandates (King v Barnes, 113 NY 476). Inasmuch as the objective is deterrence of disobedience of judicial mandates, the penalty imposed is punitive in nature (State of New York v Unique Ideas, supra). ” (Matter of McCormick v Axelrod, supra, at 583.) Judiciary Law § 751 (1) provides: "[P]unishment for a contempt, specified in section seven hundred fifty, may be by fine, not exceeding two hundred and fifty dollars, or by imprisonment, not exceeding thirty days, in the jail of the county where the court is sitting, or both, in the discretion of the court.”
Applying those standards to the conduct which was proven in this case leads to the inescapable conclusion that each of the owners should be sentenced to 10 days in jail and to pay a fine of $250 for each of the four orders which they violated (see, Department of Hous. Preservation & Dev. v Ferranti, NYLJ, Oct. 15, 1984, at 15, col 3 [App Term, 1st Dept]).
The court has rarely been confronted with conduct which was so blatantly violative of its orders. The owners repeatedly came to court and tried to excuse their conceded failure to comply with the court’s directives by asserting a lack of funds. Yet, at trial no such proof was offered. Indeed, many repairs were done apparently to increase revenue from vacant units and were more expensive than the required work. All that was established was the performance of repairs after this contempt proceeding was commenced. Further, although the trial ended nearly one year after the last day to do repairs, slipshod work continued; the required work was not yet completed. No proof was offered that the work could not have been performed timely or properly. The owners have abdicated their responsibility to supervise the work and have, in *876 essence, "taken their time” and ignored the court’s orders. Criminal contempt is the public’s remedy, designed to enforce compliance with and respect for the court’s mandates.
In the ordinary course the court would let the matter stand here. However, the circumstances of this case justify a different treatment. The owners are an elderly woman who inherited the premises and her son, an attorney. They have provided a substantial restoration — in some instances in excess of what was required. The court will, therefore, offer them an opportunity to ameliorate their sentences.
The law is well established that the court can allow parties to purge themselves of contempt and may set reasonable terms for doing so. (See, e.g., Busch v Berg, 52 AD2d 1082; Matter of Storm, 28 AD2d 290, 292-293.) The final order of the court may be conditional. (See, Denberg v Denberg, 21 AD2d 863.) "[CJommitment pursuant to section 750 of the Judiciary Law 'is remedial and coercive, and the recalcitrant witness holds the key to his freedom.’ (People ex rel. Valente v. McCloskey, 6 N Y 2d 390, 399.)” (People v Columbo, 29 NY2d 1, 4.) Once a defendant has been found in criminal contempt under the Judiciary Law, the court may properly impose punishment or allow the contemnor to purge the contempt. (Compare, People v Leone, 44 NY2d 315, which holds that contempt prosecuted under the Penal Law may not be purged.)
The court will allow the owners to purge themselves of the criminal contempt and both the fine and imprisonment to be imposed thereon if the following conditions are met:
1. The owners shall, prior to April 6, 1987, submit to the court for approval a plan pursuant to which each of them will perform 100 hours of service to the community of the homeless in Manhattan. The service shall be under the aegis of any recognized community group and shall involve the feeding and sheltering of homeless individuals. Legal services will also be acceptable.
2. The owners will undertake, in writing, to comply with the approved plan which will involve reports to the court by the group through which the services are to be performed.
3. All of the repairs previously required are to be completed by April 6, 1987.
In the event such a plan is submitted and approved by the court, judgment on the criminal contempt finding will be held in abeyance pending completion of the service. Upon success *877 ful completion of the service, the court will deem the owners to have purged themselves of the contempt and will dismiss the criminal contempt proceeding. If no plan is submitted within the time provided, or if there is not compliance with the plan, the court will enter judgments in favor of the Comptroller of the City of New York (Goodman v State of New York, 31 NY2d 381, 384-385; Judiciary Law §§790, 791; Buncke v Bertrand, NYLJ, Jan. 9, 1985, at 14, col 5 [App Term, 2d & 11th Jud Dists]) against each owner for $1,000 and will issue commitments for imprisonment of each owner for 10 days for criminal contempt. Punishment will ensue not for breach of the terms of the plan, but "because of his failure to comply with the terms of the original order which he accepted.” (Loebel v Loebel, 237 App Div 591, 593.)
The hearing will be April 6, 1987, Part 18L at 9:30 a.m.