OPINION OF THE COURT
Theodore Diamond, J.
1. Petitioner tenant commenced this "tenant action” in December 1986 for an order to correct violations (Administrative Code of City of New York former § D26-51.01 [now § 27-2115]).
2. An appropriate order, on default, after a hearing and *747 based on a November 10 inspection report, was signed by Judge Bank on December 11, 1986.
4. Corespondent New York City Department of Housing Preservation and Development (HPD) moved by order to show cause (OSC) on January 15, 1987, for an order to punish Atop (and also Philip Most, an officer of Atop), for civil and criminal contempt. On the January 28 return date, this OSC was referred to me because I had previously been assigned two other cases involving this building.
10. Most, who has been proven to be an Atop officer, in fact managing the building for Atop, and an owner within the definition of Administrative Code § 27-2004 (a) (45) and Multiple Dwelling Law §4 (44), may be subjected to contempt proceedings for failure to comply with the underlying December 11 order directed to Atop. Where an officer of a corporate owner is directly or indirectly in control of building, the term "owner” is not limited solely to the owner of record. The Administrative Code contemplates piercing the corporate veil to reach such persons. In Department of Hous. Preservation & Dev. v Pirlamarla (NYLJ, Feb. 28, 1983, at 13, col 1 [App Term, 1st Dept]), defendant was the registered managing agent as well as principal of the corporate owner, and deemed to be in control of and responsible for the building’s maintenance.
In N. A. Dev. Co. v Jones (99 AD2d 238 [1st Dept 1984]), a corporate officer was included in the punishment of a corporation although not a party in the proceeding, where the mandate disobeyed was served personally upon the individual officer in question.
23. I fine Most and Atop $500 each for the civil contempt violations, since they each disobeyed a lawful mandate of the court, and the contempt was calculated to defeat and impede the rights of two parties (Johnson and HPD). A penalty of imprisonment until they comply is inappropriate because I have appointed a RPAPL article 7-A administrator.
24. I fine Most and Atop $250 each, for the criminal con-tempts, since they willfully and deliberately disobeyed Judge Bank’s order; and Most is sentenced to 30 days’ imprisonment.
25. Settle an order and warrant of commitment.
26. I cover remaining issues which are resolved against respondents. Yet, it would be inappropriate not to identify and analyze them.
The case began as what we informally call a "tenant-initi *748 ated HP action”, brought against Atop and HPD as respondents, pursuant to Administrative Code § 27-2115 (h), (i). Tenant Johnson is the petitioner; HPD is a corespondent. Although Atop and HPD are named as respondents in the caption of the December 11, 1986 underlying order by Judge Bank, HPD isn’t ordered to do anything. While petitioner tenant could move to punish for contempt of an order directed to respondent Atop, cana, corespondent HPD move to punish corespondent Atop for contempt of an order naming each of them as a respondent? Our own research under contempt statutes has not found such a case. HPD cites N. A. Dev. Co. v Jones (supra) but the opinion does not discuss this. In fact, that was not a tenant Housing Part (HP) action, but a nonpayment case (supra, at 239). Yet, I rule that HPD’s general responsibilities for housing code enforcement are so broad, and the need for enforcement so paramount, that HPD should be allowed to make such a motion against a corespondent (Multiple Dwelling Law §§ 303, 304, 306; Administrative Code § 27-2115 et seq.; § 27-2120 et seq.; § 27-2090 et seq.; NY City Charter § 1802; CCA 110 [a] [9]). As in my opinion in Royal v Rock (HP 1574/84, Aug. 14, 1985), the relevant Administrative Code sections "might well be recodified to more accurately describe how tenant-initiated HP actions are handled in Housing Court”.
A related issue is whether an order to comply emanating from a tenon ¿-initiated HP case can be the basis of a contempt order brought on by anyone, notwithstanding Gregori v Ace 318 Corp. (134 Misc 2d 871).
First, the OSC form used for such cases specifies that it is for an order to correct violations, and failure to do so will lead to "an order directing the DHPD to enter a judgment * * * for the penalties”. The underlying orders direct respondents to do certain things (e.g., make repairs), and if they do not, they are subject to penalties or in some cases may be subject to contempt (paras d, h, i, k).
Yet, the subdivisions dealing with tenant-initiated HP actions (Administrative Code § 27-2115 [h], [i]) both specify that if an owner does not comply with an order to correct, the court "shall impose a penalty”, or "shall assess penalties”, as provided in section 27-2115 (a). It does not say anything about a contempt citation. The basic language dealing with HPD actions for orders and contempts was enacted as Housing Maintenance Code article 53, in 1967 (now Administrative Code § 27-2120 et seq.). While its drafters wanted a civil *749 penalty article as part of the HMC, it was not enacted at that time. The civil penalty article, first enacted as Housing Maintenance Code article 51 in 1972 (L 1972, ch 982), included a provision for tenant-initiated HP actions that had not been in the Housing Maintenance Code draft of 1967. Thus, nothing in article 53 mentioned that a contempt could result from an order in a tenant-initiated HP case. When HPD starts a case for an order to comply, it brings it under Housing Maintenance Code article 53. Even so, CCA 110 (c) gives the court broad authority to utilize any procedure authorized, in any case, if it will be more effective (see, L 1972, ch 982, § 1 [b]; 1972 NY Legis Ann, at 373, 216, 218). Sobeit!
[Portions of opinion omitted for purposes of publication.]