OPINION OF THE COURT
Gustin L. Reichbach, J.
This is one of at least six different proceedings in the Housing Court and elsewhere between petitioner and respondent Dockery. In this action petitioner, joined by respondent Department of Housing Preservation and Development, seeks to have respondent Dockery held in both criminal and civil contempt under the Judiciary Law, and for an order imposing civil penalties as provided for in the Administrative Code, and for a further order compelling respondent Dockery to cure claimed continuing violations of the Housing Maintenance Code.
This was a tenant-initiated Housing Part action brought pursuant to section 27-2115 of the Administrative Code of the City of New York, commenced by order to show cause, dated September 25, 1990. It resulted, after a hearing in which all parties participated, in an interim order, dated October 15, 1990, directing the respondent to correct three enumerated violations. That interim order was superseded by an order, dated November 26, 1990, based on an inspection report of November 19, 1990, which directed respondent to correct seven enumerated "B” (hazardous) violations.
Prior to the initiation of the instant contempt proceeding, this action had been restored to the calendar twice before for the purpose of assessing civil penalties. Respondent Dockery failed to appear in connection with those proceedings and two default judgments had been entered against him. At the start of the trial of this contempt proceeding, respondent moved to be relieved of the default judgments previously entered in those proceedings. Those motions are the subject of two other decisions/orders of this court.
The instant contempt proceeding was initiated by Department of Housing Preservation and Development and petitioner on April 18, 1991. Two months later respondent Dockery illegally evicted petitioner Odimgbe and his family from *586 the premises.[1] Trial on this contempt proceeding began December 19, 1991 and was concluded January 16, 1992.
The Trial
At the start of the trial both sides stipulated to the admission into evidence of a number of documents, including two inspection reports dated December 17, 1991 and March 15, 1991. The March 15th report is central in the determination of this case.
Both Mr. and Mrs. Odimgbe testified, he on petitioner’s direct case and she on the rebuttal case. Mr. Dockery testified on his own behalf, as did his wife, Classic Mae Dockery, and his brother, Algia Dockery. The story of the two sides stand in sharp contrast with each other. Donatus Odimgbe and his wife Renny Odimgbe both testified that subsequent to the November 26th order to repair and until they were evicted on June 30, 1991, the respondent performed no repairs whatsoever in the premises. The Dockery family testified that they personally did the repair work in the building and corrected all the violations contained in the November 26, 1990 order during the months of November and December 1990. Dewey Dockery did not impress the court as a candid and forthright witness because his testimony was filled with self-serving contradictions. At one point in his testimony he claimed to own a number of buildings; then, at another point he disclaimed ownership. Likewise, he testified that he was the agent responsible for management of these properties, then later testified that he stopped managing the property at issue in this proceeding.
In the swearing contest between the Odimgbes and the Dockerys, the inspection report of March 15, 1991 is crucial. While, as discussed below, the court has substantial reservations with the form and some of the substance of the report, the court does credit the report’s basic accuracy and it substantiates the Odimgbes’ version of events and directly contradicts the claims of respondent.
The order of November 26, 1990 required the respondent to *587 correct seven class B violations, as contained in an inspection report dated November 19, 1990. The specifics of the report are important in determining what respondent was required to correct and whether petitioner has met his burden in establishing respondent’s failure to do so. Those violations were:
"1. Illegal Heater. 3 story public hall scuttle closet
"2. Replace. Wall outlet cover kitchen 3 story apt. 2
"3. Remove vermin. Mice & roaches 3 story apt 2
"4. Repair plaster. Walls bathroom 3 story apt 2
"5. Repair. Wood floor, private hall 3 story apt 2
"6. Replace. Ceiling light fixture 1, 2, &3 stories public hall
"7. Abate the nuisance. Exposed electrical wires ceiling 1, 2, &3 stories public hall”.
The inspection report of March 15, 1991 shows that all the violations except number 2 remained uncorrected as of that date.[2] When confronted with the March 15, 1991 report on cross-examination, respondent Dockery’s only explanation was that "someone must have been messing with the repairs,” though according to his own testimony the repairs, which he claims were all done by December 1990, were all still in place when he retook possession in July 1991.
Inspector Leland Paul who prepared the inspection report of December 17, 1991 was called as a witness. His inspection report indicated that as of December 17, 1991 all the violations had been corrected except for violations 1 and 4. According to the inspector, violation 4 had been repaired, but improperly because there were still cracks in the bathroom wall. With regard to violation 1, Inspector Paul testified on direct that the heater wasn’t properly vented, later asserting that it wasn’t vented at all and that the fumes posed a danger. He also testified that the heater should not be on the third floor; *588 however, he neither gave an explanation nor cited any provision of the Code that prohibited its placement in this location.
On cross-examination that inspector testified that the heater was on, that he could see or smell no fumes and that the heater had piping, but he didn’t know where it went. The respondent introduced into evidence photographs of the heater showing a vent pipe going through the ceiling on the top floor of the building, which respondent testified vented out above the roof. The fact that the inspector failed to try to trace where the piping on the heater was going added to his unimpressive testimony concerning his expertise in this area.
The Law
The petitioner seeks to have the respondent held in both criminal and civil contempt pursuant to sections 750 and 753 of the Judiciary Law and to impose both fines and imprisonment pursuant to sections 751, 773 and 774 of the Judiciary Law.
Anomalies abound in the area of contempts under the Judiciary Law. While the same act may be punishable as both criminal and civil contempt (Matter of Department of Envtl. Protection v Department of Envtl. Conservation, 70 NY2d 233 [1987]; Matter of Larisa F. v Michael S., 122 Misc 2d 520 [Fam Ct, Queens County 1984]), the two types of contempt serve different purposes. Criminal contempt involves offenses against judicial authority and is utilized to protect the integrity of the judicial process and compel respect for its mandates. As an offense against public justice the penalty to be imposed is punitive. Civil contempt arises when the rights of a private individual have been harmed by the contemnor’s failure to obey a court order. Any penalty to be imposed for civil contempt is for the purpose of compensating the injuries of a private party or to coerce compliance. (Matter of Department of Envtl. Protection v Department of Envtl. Conservation, supra; Matter of McCormick v Axelrod, 59 NY2d 574 [1983], amended 60 NY2d 652.)
Notwithstanding the different purposes served by criminal and civil contempt, punishment for criminal contempt can include incarceration for up to 30 days while sanctions for civil contempt can include indefinite imprisonment until the contemnor complies with the order, of if the contemnor can no longer perform the act, order imprisonment for up to six months. This seemingly punitive sentencing alternative for *589 civil contempt has been called "aberrant” and "extraordinary”. (N.A. Dev. Co. v Jones, 99 AD2d 238 [1st Dept 1984].) In addition, its constitutionality has been called into question since, as the case law has developed, a finding of civil contempt can be based on a standard of proof less than beyond a reasonable doubt. (N.A. Dev. Co. v Jones, supra, at 243-245 [Sandler, J., dissenting].)[3]
The standard of proof necessary to find someone in civil contempt is "reasonable certainty.” (Matter of McCormick v Axelrod, supra; Matter of Hynes v Hartman, 63 AD2d 1 [1st Dept 1978].) While the courts have generally required a standard of proof beyond a reasonable doubt in criminal contempt cases under the Judiciary Law (Yorktown Cent. School Dist. No. 2 v Yorktown Congress of Teachers, 42 AD2d 422 [2d Dept 1973]; Matter of Hynes v Doe, 101 Misc 2d 350 [Sup Ct, Queens County 1979]), the Court of Appeals, as recently as 1987, noted its view that the standard for both civil and criminal contempt was the same, that of "reasonable certainty.” (Matter of Department of Envtl. Protection v Department of Envtl. Conservation, supra, at 240.)
In order to reconcile the court’s concerns with the clear language of the statute, it is this court’s view that a single standard of proof — that of proof beyond a reasonable doubt— must be used before the court can impose a punitive jail sentence, whether the contempt be classified as either criminal or civil.
The application of a single standard does not mean, however, that the proof required to sustain the petitioner’s burden is identical in criminal and civil contempt cases. While the same act may be punished as both a civil and criminal contempt, a finding of willfulness must be made in order to elevate a civil contempt to a criminal one. (Matter of McCormick v Axelrod, supra; N.A. Dev. Co. v Jones, supra; Matter of Murray, 98 AD2d 93 [1st Dept 1983].) In order to find a respondent in civil contempt, the court must find that respondent’s action or inaction prejudiced, defeated or impeded the rights of the other party. (Matter of McCormick v Axelrod, *590 supra; Oppenheimer v Oscar Shoes, 111 AD2d 28 [1st Dept 1985].)
Findings of Fact
The court finds that the respondent Dockery is a proper party to this proceeding, and that the court had both personal and subject matter jurisdiction to enter its order of November 26, 1990.
The order to show cause initiating this Housing Part action was commenced in September 1990. At the return date of that motion respondent Dockery appeared and raised no objection to personal jurisdiction. At that time an interim order was entered and a future return date provided for, which subsequently resulted in the order of November 26, 1990. Having appeared in this action without challenging personal jurisdiction, the respondent has waived his right to raise the issue after trial.
Respondent’s argument that the court lacks subject matter jurisdiction over the respondent because he is not the owner of the premises is without foundation. At trial, respondent Dockery acknowledged that he was manager of the property at the time of the interim order and for some time thereafter and that he was still doing repairs at the premises. He further testified that during the period between January and June 1991, he made numerous rent demands on petitioner. The fact that he is not the owner, or that the building is not a multiple dwelling does not mean he is not subject to this proceeding. The Housing Maintenance Code (Administrative Code § 27-2004 [45]) defines an owner for purposes of responsibility as any "agent, or any other person * * * directly or indirectly in control of a dwelling.” The definition of dwelling under the Code (§ 27-2004 [3]) is not limited to multiple dwellings as suggested by respondent’s counsel, but includes "any building * * * or portion * * * occupied in whole or in part as the home, residence or sleeping place of one or more human beings.”
Thus, the court had both personal and subject matter jurisdiction to enter the order of November 26, 1990, and that mandate contained an unequivocal order, directed at respondent, to cure enumerated violations.
The court finds that the respondent had personal knowledge of the court’s order of November 26, 1990. At trial, respondent Dockery acknowledged that he knew of the order of November *591 26, and the court takes judicial notice of the affidavit of service filed in connection therewith showing service of the order upon him.
The petitioner has not met its burden in connection with the violation alleging an "illegal heater.” The bare assertion that the heater is illegal is insufficient to give respondent notice as to what must be cured. Furthermore, due to the vague description of this violation, the court cannot compare the inspection reports of November 26, 1990 and March 15, 1991 with the testimony of Inspector Paul. Given the seriousness with which this court views allegations of contempt, and the severe penalties that attach to such a finding, the court will not speculate as to what the basis was for the claim of illegality of the heater. In the absence of any specific fact establishing why the heater was illegal, the petitioner is unable to meet its burden of proving that respondent failed to correct this condition.
The court further finds that petitioner has proven beyond a reasonable doubt that the order of November 15, 1990 has been disobeyed with respect to violations 3 through 7.
The court further finds that the failure of the respondent to obey the order of November 26, 1990 was willful and deliberate. Respondent Dockery made no claim that he tried or wanted to try to comply with the court’s order but was somehow unable to do so. Instead he claimed that he did comply, an assertion not credited by the court. This finding of willfulness is further buttressed by the documents stipulated into evidence which establish that the respondent wrongfully evicted the petitioner from the premises subsequent to the date repairs were to have been, but were not, made.
Finally, the court finds that the rights of petitioner were prejudiced by the disobedience by respondent of the court’s order. It can hardly be disputed that the failure to timely cure hazardous violations works a substantial prejudice to the rights of the party entitled by law to habitable, nonhazardous, premises. Such prejudice is rendered more severe and the level of willfulness enhanced when the respondent knew that these premises were inhabited not only by Mr. and Mrs. Odimgbe, but by their two small children as well.
Based on the foregoing, the court finds that petitioner has proven beyond a reasonable doubt all the elements necessary to establish that the respondent is guilty of both criminal and civil contempt for failure to timely correct 5 of the 7 violations contained in the order of November 26,1990.
*592 The order of November 26, 1990 also provided that if the respondent failed to timely cure these violations he would be subject to civil penalties pursuant to section 27-2115 of the Administrative Code. The order gave respondent 30 days to correct these conditions. The order was served upon respondent by mail on November 27, 1990 and thus the 30-day period began to run on December 2, five days after mailing. Respondent had until January 1, 1991 to comply with the order with penalties commencing as of January 2, 1991. Petitioner has established that the violations remained uncorrected through July 1, 1991 the day petitioner and his family were evicted from the premises. The court finds that petitioner has proven 180 days of noncompliance with the order to correct.
Civil Penalties
Section 27-2115 provides that a person who violates any law relating to housing standards shall be subject to civil penalty of not less than $25 nor more than $100 plus $10 per day for each hazardous violation. Respondent failed to correct five hazardous violations and such failure continued for a period of 180 days. Consequently, the court hereby orders respondent to pay civil penalties in the sum of $9,500 (5 violations at $10 each for a period of 180 days or $9,000 plus $100 for each of 5 violations for an additional $500).
Sentencing for the Contempts
The court has given great thought to an appropriate sentence based on the somewhat unique facts presented by this case. As a general rule when the petitioner has established that violations remain uncured at the time the contempt proceeding has concluded this court’s inclination is to commit the respondent to an indefinite jail term. Likewise, when the violations have been corrected late, but have been fully corrected at the time of the contempt trial, it is this court’s general policy to fashion a remedy that does not necessarily require incarceration. Here the evidence established that the respondent failed to comply with the court’s order for at least half a year. A serious additional fact, which the court finds to be an aggravating circumstance, is that the respondent took no steps to cure these violations until after he had illegally evicted petitioner and his family. Such additional aggravating circumstance suggests to the court that this case is an appro *593 priate one in which to depart from its general sentencing practice, though the respondent is entitled to consideration of the fact that he has finally complied with the court’s order, albeit very late and in a manner which deprived the petitioner from reaping any benefit as a result of such belated compliance.
While criminal contempt prosecuted under the Penal Law may not be purged (People v Leone, 44 NY2d 315 [1978]; Trice v Ciuros, 127 Misc 2d 289 [Sup Ct, Onondaga County 1985]) the court has broad powers to permit the parties to purge themselves of contempt under the Judiciary Law. (Midlarsky v D’Urso, 133 AD2d 616 [2d Dept 1987]; Matter of Nestler v Nestler, 125 AD2d 836 [3d Dept 1986].)
"[U]pan an application for a contempt adjudication, the court should exercise its judicial discretion broadly to accomplish justice on the basis of all facts and circumstances bearing upon the nature and willfulness of the respondent’s conduct.
"Furthermore, a contempt adjudication generally requires the exercise of the court’s discretion in determining the nature and extent of the punishment to be imposed, in determining whether or not the respondent should have an opportunity to purge himself of the contempt and in fixing the conditions relative thereto.” (Matter of Storm, 28 AD2d 290, 293 [1st Dept 1967].)
The final order of the court may be stayed to permit the contemnor to satisfy the conditions the court has set and thus purge the contempt. (Denberg v Denberg, 21 AD2d 863 [1st Dept 1964].)
Based on the foregoing, the court finds respondent guilty of criminal contempt and sentences respondent to imprisonment in the county jail for a period of 20 days and also fines respondent the sum of $1,000. (Judiciary Law § 751 [1].) The court further finds respondent guilty of civil contempt and sentences respondent to imprisonment in the county jail for a period of 20 days, said sentence to run concurrent with the sentence imposed for criminal contempt, and further fines respondent the sum of $250. (Judiciary Law §§ 773, 774 [1].)
The court will, however, permit the respondent to purge himself of both the criminal and civil contempt by paying the total contempt fines imposed of $1,250 within 30 days of this order and by performing a total of 60 hours of community service at a homeless shelter under the direction of the *594 Partnership for the Homeless, 110 W. 32nd Street, New York, New York. (See, Gregori v Ace 318 Corp., 134 Misc 2d 871 [Civ Ct, NY County 1987].) Said community service requirement is to be completed within 75 days of the date of this order. Within 14 days of this order, the respondent is directed to meet with Mr. Robert Ogilvie of the Partnership for the Homeless and devise with him a schedule for the performance of his 60 days’ community service and to submit such plan to the court for its approval. Should respondent fail to comply with the conditions set forth by the court for purging himself of the contempt, then the sentence will be executed in accordance with the above.

. Respondent’s C in evidence is a decision of the Housing Court (index No. L&T 100102/90, Hon. Arthur R. Scott, Jr., J.). Judge Scott found that Mr. Odimgbe had complied with all the terms and conditions of a previously entered stipulation between the parties and that Mr. Dockery had wrongfully executed upon the warrant of eviction. The court thereupon vacated the judgment and warrant previously issued.

. This report, indicating that violation No. 2 was corrected, is at odds with petitioner’s testimony that no repairs were undertaken while the tenants were still in the premises. This minor discrepancy does not alter the essential fact that the departmental report corroborates the petitioner’s claims. I believe the violations contained in items 1 and 2 are insufficiently specific, both to give respondent adequate notice of what must be cured and to sufficiently particularize what facts petitioner must establish to meet its burden of proof in this proceeding. Because of this lack of specificity, the court entertains serious doubts whether violation No. 2 in the March 15, 1991 report is the same violation as that contained in the report of November 19, 1990.

. The Appellate Division, First Department, expressed its discomfort with the established interpretation of Judiciary Law § 774 as "permitting a wholly punitive sentence of imprisonment up to six months in civil contempt.” It noted its doubt as to the constitutionality of this provision and the dissent noted that "these sections are long overdue for legislative review and revision.” (N.A. Dev. Co. v Jones, 99 AD2d 238, 241, 245.) To date, the Legislature has declined the invitation to rewrite these statutes.